MR. JUSTICE MORRISON
delivered the Opinion of the Court.
Wayne S. Hall, appellant, requested the State Compensation Insurance Fund to waive any subrogation interest it might have in a third-party claim filed by Hall and to redetermine Hall’s permanent partial impairment rating. The State Fund refused both requests. Hall petitioned the Division of Workers’ Compensation to review the State Fund’s decision. On March 23, 1984, the Division determined that the State Fund’s decision was correct. On December 24, 1984, the Workers’ Compensation Court also affirmed the State Fund. Hall now appeals to this Court. We reverse.
This cause was submitted to the Workers’ Compensation Court and to this Court on the following agreed statement of facts:
“1. Wayne S. Hall was injured within the scope and course of his employment for Karl Weissman and Sons on August 6, 1982. At the time of the Petitioner’s injury, Karl Weissman and Sons was enrolled under Plan 3 of the Workers’ Compensation Act, and the State Compensation Insurance Fund was its compensation carrier.
“2. Respondent accepted liability for the Claimant’s injury and paid medical benefits of $2,260.01 and acknowledged liability for an indemnity permanent partial disability award of $11,835.00. The ‘Guide to Evaluation of Permanent Impairment’ published by the American Medical Association was utilized by the Compensation Insurance Fund in computing the indemnity for permanent partial disability. Utilizing this guide, the following evaluation was made: (a) 15% upper arm impairment = 9% of the whole man; (b) 25% of lower leg impairment = 10% of the whole man; then utilizing the AMA Guide, the combination of those two impairments would equal 18% of the whole man. This resulted in a computation of 90 weeks of compensation at $131.50 a week for a total of $11,835.00.
“3. The preface of the AMA Guide published in 1971 contains the following language: ‘After values of all impairments involved have been computed and transposed to a common denominator, the final impairment value, whether the result of a single or combined impairments, should be expressed in terms of the nearest 5%.’ The Claimant requested that these guidelines be followed and that his *182 permanent partial impairment be set at 20% rather than 18%, and the State Fund declined to make the adjustment.
“4. The Claimant pursued a third party claim as the result of the injury, and the State Fund declined to participate. The Claimant settled the third party claim for the sum of $25,000. This represented the insurance policy limits of the third party tort-feasor. The Claimant’s expenses, costs and attorneys’ fees for the third party action amounted to the sum of $6,259.00. The Respondent claimed a subrogation interest of $7,048.00 and subtracted that amount from the indemnity award at the time of payment. The Claimant contended that his third party claim was valued in excess of $40,000.00 but that the $25,000.00 settlement at policy limits was all that was available. On March 23, 1984, the Division of Workers’ Hall, Compensation conducted an administrative review of the matter and determined that the claimed subrogation interest of the Respondent was appropriate.”
Prior to oral argument, the parties settled the impairment rating issue. The remaining issue to be determined is:
If the value of the claimant’s total damage for the personal injuries he sustained exceeded $40,000, and the $25,000 insurance coverage constituted the only source of funds to liquidate such damage, was the respondent entitled to a subrogation interest in the $25,000 settlement proceeds of the third-party claim?
In answering this question affirmatively, the Workers’ Compensation judge relied on this Court’s decision in Brandner v. Travelers Insurance Company (1978), 179 Mont. 208, 587 P.2d 933. This reliance is misplaced as Brandner is easily distinguishable from the caes at bar. In Brandner, the claimant settled with the third party, Burlington-Northern, for $70,000, an amount not dictated by the upper limits of any insurance policy. We found that claimant was made whole by a voluntary settlement in satisfaction of all claims. The defendant, Burlington Northern Railroad, had no limited liability. Since claimant had obtained full legal redress, we held that claimant’s employer’s insurer was entitled to subrogation.
In the case at bar, however, claimant reached a settlement with the third-party tortfeasor which did not afford full legal redress. The settlement was for the upper limit of the tortfeasor’s insurance policy, $25,000. If claimant’s damages exceed $40,000, claimant’s settlement, together with the Workers’ Compensation award, does not fully compensate claimant. Under these circumstances, we find our *183 decision in Skauge v. Mountain States Telephone and Telegraph Company (1977), 172 Mont. 521, 565 P.2d 628, to be relevant.
In Skauge, claimants’ rented home was destroyed by an explosion. Their personal belongings were insured for $4,000. The actual value of the property was over $11,000. Claimants recovered the upper limit of their insurance policy, then sued third-party tortfeasors, seeking the total amount of their loss. In addressing an issue regarding the subrogation rights of the insurer, we stated that:
“. . . when the insured has sustained a loss in excess of the reimbursement by the insurer, the insured is entitled to be made whole for his entire loss and any costs of recovery, including attorney’s fees, before the insurer can assert its right of legal subrogation against the insured or the tort-feasor.” Skauge, 172 Mont. at 528, 565 P.2d at 632.
Applying this principle to the facts now before us, the State Fund is not entitled to any subrogation interest in the $25,000 settlement proceeds as claimant has not been made whole.
Furthermore, 1972 Mont. Const., art. II, Section 16, provides in pertinent part:
“No person shall be deprived of this full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen’s Compensation Laws of this state . . .”
This section was interpreted in White v. State (Mont. 1983), [203 Mont. 363,] 661 P.2d 1272, 40 St.Rep. 507, as creating a fundamental right to full legal redress. Thus, to interpret the Workers’ Compensation Act’s subrogation statute, Section 39-71-414, MCA, to allow the State Fund subrogation rights when the claimant has not achieved full legal redress would be an unconstitutional application of an otherwise constitutional statute. (See Brandner, 179 Mont. at 211-214, 587 P.2d at 936 - 937, for a discussion of the constitutionality of Section 39-71-414, MCA.)
We hold that, in a case of reasonably clear liability, where a claimant is forced to settle for the limits of an insurance policy which, together with claimant’s workers’ compensation award, do not grant full legal redress to claimant, the insurer is not entitled to subrogation rights under Section 39-71-414, MCA. When claimant is made whole, subrogation begins.
Reversed.