No. 85-22

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

ALFRED M. ELWELL,

        Claimant and Appellant,

    -vs-

AMERICAN SMELTING AND REFINING, INC.,
(ASARCO),

        Employer, Defendant and
        Respondent.

---

APPEAL FROM: The Workers' Compensation Court, The Honorable
Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Utick, Grosfield & Uda; Joan A. Uda, Helena, Montana

    For Respondent:

        Hughes, Kellner, Sullivan & Alke; Stuart L. Kellner,
        Helena, Montana

---

Submitted on Briefs: Oct. 3, 1985

Decided: December 31, 1985

Filed: DEC 31 1985

_Ethel M. Harrison_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Alfred Elwell appeals from a December 12, 1984, judgment of the Workers' Compensation Court that determined Elwell's employer, ASARCO, was entitled to subrogation against Elwell's third party settlement from Anthony Strainer, a co-employee. The judgment of the Workers' Compensation Court is remanded for further proceedings.

The parties agree on the following facts:

ASARCO is a self-insured employer under Compensation Plan 1 of the Workers' Compensation Act (hereinafter the Act). On October 17, 1979, Elwell suffered an industrial injury while working at the ASARCO plant in East Helena, Montana. ASARCO supplied stannic oxychloride to test respirator masks for leakage. The chemical was to be blown around the outside of the mask while a worker was wearing a respirator; a leak would cause the worker to cough, showing a need to refit the mask. Anthony Strainer, a co-employee who was then the plant OSHA officer, unscrewed the respirator hoses from Elwell's oxygen tank and squirted stannic oxychloride, a toxic gas, into claimant's respirator. Neither Elwell nor Strainer were testing at the time the injury occurred. Strainer, acting without Elwell's knowledge, squirted the chemical into the respirator as a practical joke.

Elwell suffered serious, disabling injuries to his bronchial system as a result and has not been gainfully employed since October 17, 1979. ASARCO accepted liability for the claim and paid Workers' Compensation benefits of

$41,269 temporary disability, $198 per week permanent disability and $4,639 medical.

In October 1981, pursuant to § 39-71-413, MCA, Elwell sued Strainer alleging that Strainer's intentional and malicious act caused Elwell's injury. Elwell also named ASARCO as a defendant, but that claim was dismissed because the provisions of the Act were determined to be Elwell's exclusive remedy from ASARCO. ASARCO elected not to participate in the cost of the action against Strainer, thus waiving 50% of the subrogation rights granted by statute. Section 39-71-414(2)(c).

Prompted by Elwell's suit, Strainer's homeowner's insurance company, Millers Mutual Insurance Company, sought a declaratory judgment that Strainer's act was intentional and therefore not covered under the homeowner's insurance policy. This Court held that the Millers' Mutual policy provided coverage. Miller Mutual Insurance Co. v. Strainer (Mont. 1983), 663 P.2d 338, 40 St.Rep. 743.

Elwell then negotiated a settlement of his claim against Strainer for $50,000, the policy limits. Elwell incurred attorneys' fees of $16,500 and costs of $30 leaving a net recovery of $33,470. The parties agreed that pursuant to § 39-71-414(2)(d), MCA, Elwell was entitled to one-third, or $11,157. ASARCO asserted a subrogation right to the $22,313 balance, but Elwell disagreed. The parties invested the disputed money in a tax-exempt money market fund. The balance of that account, which continues to draw interest at a variable rate, was $24,139 as of July 16, 1984.

The Workers' Compensation Court, citing § 39-71-414, MCA, ruled that ASARCO was statutorily entitled to

subrogation for the $22,313 but gave Elwell the interest earned.

Elwell appeals, raising two issues:

Issue No. 1. Did ASARCO have a right of subrogation in Elwell's third party settlement?

Issue No. 2. Are Elwell's attorneys entitled to fees and costs incurred incident to the resolution of issue no. 1?

ASARCO raises one issue:

Did the Workers' Compensation Court err in concluding that Elwell was entitled to the interest earned on the disputed amount?

The Workers' Compensation Court, relying on the following statutory language, concluded ASARCO was entitled to subrogation:

> 37-71-414(1). If an action is prosecuted as provided for in . . . 39-71-413 and except as otherwise provided in this section, the insurer is entitled to subrogation for all compensation and benefits paid or to be paid under the Workers' Compensation Act. The insurer's right of subrogation is a first lien on the claim, judgment or recovery.

Strainer's acts were intentional as that word is used in § 39-17-413, MCA. Elwell sued Strainer and settled for Strainer's policy limit of $50,000 which is reduced by $16,530 attorneys' fees and costs. Elwell contends that, although he is receiving the maximum benefits allowed under the Workers' Compensation Act, it is not sufficient to compensate him for his injury so ASARCO is not entitled to subrogation.

Elwell concedes, and we agree, that tort concepts of negligence and full legal redress do not apply to benefits under the Workers' Compensation Act. There is a trade-off of full redress for not requiring proof of fault. Elwell also

- 4 -

concedes, and we agree, that ASARCO's actions do not take them out of the exclusive remedy provisions of the Act.

But, Elwell argues this is an atypical industrial accident. Elwell's injuries were caused by the intentional acts of his co-employee, Strainer. ASARCO's acts did not remove it from the exclusive remedy provision of the Workers' Compensation Act, but ASARCO's safety officer, showing incredibly poor judgment, caused the accident. ASARCO chose Strainer to be their safety officer; ASARCO provided the noxious gas, and ASARCO gave Strainer access to it.

As the Workers' Compensation Court recognized, Elwell raises an equitable argument against subrogation. The wrongful acts of ASARCO's safety officer injured Elwell. The Act, however, provides that the insurer, or in this case the self-insured, is entitled to subrogation. Mr. Elwell is caught in the legal twilight zone where the Act precludes him from pursuing tort remedies from ASARCO, but a part of the tort recovery he received from Strainer may be returned to ASARCO.

This issue is controlled by our decision in Hall v. State Compensation Insurance Fund, Division of Workers' Compensation (Mont. 1985), ___ P.2d ___, 42 St.Rep. 1502. That case treated the problem of a claimant who sustained injuries the value of which exceeded amounts he would receive under Workers' Compensation benefits and from a responsible third party. In that case the insurer claimed, as ASARCO does here, that it was entitled under subrogation to a portion of the recovery the employee made from the responsible third party.

We held in Hall that when a claimant is forced, in a case of clear liability, because of maximum limits of an

- 5 -

insurance policy to a settlement with a third party tortfeasor, the amount of which settlement, together with claimant's Workers' Compensation award, does not give the claimant full legal redress, the insurer or the employer is not entitled to subrogation rights under § 39-71-414, MCA, until the claimant has attained full legal redress.

ASARCO indicates that the claimant here will receive in Workers' Compensation benefits, over the course of his disability the total sum of $334,562. While that sum in the aggregate may seem large, it must nevertheless be considered in the light of our earlier discussion that the Workers' Compensation system is based upon a surrender by the worker of his right to full legal redress in return for the Workers' Compensation coverage provided by the employer. A question of fact exists, which must be resolved by the Workers' Compensation Court, as to whether the total prospective Workers' Compensation benefits plus the $50,000 recovery from the third party insurer, will give the claimant full legal redress. At the point where he does obtain full legal redress, if that is the case, ASARCO, in this case, under Hall, would then be entitled to subrogation for that portion of the $22,313 which exceeded full legal redress.

We are returning this cause to the Workers' Compensation Court for a determination of that issue.

Elwell also contends that he is entitled to attorneys' fees in this case, citing Wight v. Hughes Livestock Company (Mont. 1983), 664 P.2d 303, 40 St.Rep. 696, as authority for assessing fees to ASARCO rather than paying them out of the judgment. In this claim Elwell is incorrect. Attorneys' fees in Workers' Compensation cases are recoverable under § 39-71-611, MCA, where the insurer denies liability for a

- 6 -

claim for compensation or terminates compensation benefits, and the claimant is later adjudged compensable by the Workers' Compensation judge or on appeal. The dispute between Elwell and ASARCO here does not come within the provisions of § 39-71-611, MCA. Moreover, the amount of attorneys' fees incurred in the claim against the third party insurer has already been included in the computation which yields the $22,313 which is at issue here. Elwell has no right to attorneys' fees as to this disputed sum.

ASARCO claims that the Workers' Compensation Court erred in determining that Elwell was entitled to all interest earned on the $22,313 fund in escrow.

Since we hold here that Elwell's right to the $22,313 is dependent on whether or not his benefits plus his recovery from the third party insurer constitute full legal redress, a determination of which of the parties is entitled to interest accumulating on the fund is dependent upon who has the right to the proceeds, or any portion thereof. In the event that the Workers' Compensation Court determines that ASARCO is entitled to a portion or all of the $22,313, it will also be entitled to the interest earned in the same proportion. Otherwise, claimant is entitled to the interest accumulations.

The judgment of the Workers' Compensation Court is reversed, and this cause is remanded for further proceedings before that Court in accordance with this opinion. Costs of appeal to Elwell.

_John L. Sheehy_
Justice

- 7 -

We Concur:

_____
      Chief Justice

_____

_____

_____
              Justices

Mr. Justice Fred J. Weber and Mr. Justice L. C. Gulbrandson
Mr. Chief Justice J. A. Turnage concurring:

While the undersigned dissented in Hall, that opinion now is controlling. We therefore concur in the present majority opinion.

_____

_____
      Justices

_____
      Chief Justice

- 8 -