No. 94-035

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

THEODORE RUSSETTE, JR.,

     Claimant and Appellant,

  v.

CHIPPEWA CREE HOUSING AUTHORITY,

     Employer,

  and

STATE COMPENSATION INSURANCE FUND,

     Insurer and Respondent.

FILED

MAY 16 1994

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    The Workers' Compensation Court
                The Honorable Mike McCarter, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          Cameron Ferguson, Hartelius, Ferguson
          & Baker, Great Falls, Montana

     For Respondent:

          Daniel J. Whyte, State Compensation
          Insurance Fund, Helena, Montana


Submitted on Briefs:  April 14, 1994

Decided:  May 16, 1994

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Claimant Theodore Russette, Jr., filed a petition in the Workers ' Compensation Court in which he claimed the right to additional permanent partial disability benefits pursuant to § 39-71-703, MCA (1991). Based on stipulated facts and § 39-71-710, MCA (1987), the Workers' Compensation Court concluded that claimant's entitlement to disability benefits, other than for physical impairment, terminated when he began receiving social security retirement benefits. Accordingly, judgment was entered for defendant State Compensation Insurance Fund. Claimant appeals the judgment of the Workers' Compensation Court. We reverse.

The issue on appeal is whether an injured worker's right to partial disability benefits pursuant to § 39-71-703, MCA (1991), terminates when a claimant is considered retired pursuant to § 39-71-710, MCA (1987).

This case was submitted to the Workers' Compensation Court on the following stipulated facts:

Russette was injured during the course of his employment with the Chippewa Cree Housing Authority on September 26, 1991. The State Fund insured his employer against workers' compensation claims and accepted liability for the accident and his injuries. Russette received total disability benefits until his healing period ended on October 13, 1992. At that time, he was given a physical impairment rating of 17 percent, and he was awarded partial disability benefits at the rate of $168 per week. His

2

partial disability benefits were commenced on October 13, 1992, and continued for 59.5 weeks.

There is no indication in the record of Russette's 62nd birthday. However, it occurred prior to October 13, 1992, and on that birthday he elected to receive social security retirement benefits. Because he elected to receive retirement benefits, the State Fund took the position that he was not entitled to partial disability benefits beyond those to which he was entitled as a result of his physical impairment. The Workers' Compensation Court agreed.

The relevant facts are not in dispute. This case presents only an issue of law. We review the Workers' Compensation Court's conclusions of law to determine if they are correct. *Lovell v. State Fund* (1993), 260 Mont. 279, 284, 860 P.2d 95, 98.

DISCUSSION

Prior to 1987, partial disability benefits were awarded pursuant to § 39-71-703, MCA (1975), for impairment to a worker's earning capacity. Indemnity benefits for physical impairment were paid pursuant to §§ 39-71-705 through -708, MCA (1975).

Prior to 1987, § 39-71-710, MCA (1981), simply provided that when a claimant began receiving social security retirement benefits, he or she would be considered retired and no longer entitled to benefits for total disability. However, that section expressly did not apply to partial disability benefits.

3

In 1987, both § 39-71-703, MCA (1975), and § 39-71-710, MCA (1981), were amended. As amended, Section 703 provided for two types of partial disability benefits denominated as "impairment awards" and "wage supplements.*' Section 39-71-703, MCA (1987). The impairment award was based strictly on the degree of a person's physical impairment and could be paid biweekly or in a lump sum. Wage supplement awards were based upon the difference between what the worker earned at the time of his or her injury, and what the worker was qualified to earn according to that worker's "job pool" following the injury. At the same time, § 39-71-710, MCA (1981), was amended to provide that when a claimant began receiving social security retirement benefits the insurer was no longer liable for the payment of "wage supplement, permanent total disability, and rehabilitation compensation benefits."

The amended Section 710 provided that "the insurer remains liable for temporary total disability benefits, any impairment award, and medical benefits." Section 39-71-710, MCA (1987).

In 1991, Section 703 was again amended to eliminate the notion of "impairment awards" versus "wage supplement benefits." Section 39-71-703, MCA (1991). Instead, the concepts were merged and the degree of an injured worker's physical impairment simply became one factor to consider when arriving at the duration for permanent partial disability benefits. Other factors would include a claimant's age, education, wage loss, work history, and physical restrictions.

However, Section 710 was not amended in 1991. Therefore, as it existed on the date of Russette's injury, it did not provide for termination of partial disability benefits upon the receipt of social security benefits, and did provide that after retirement a claimant would continue to be entitled to an impairment award, among other benefits which are not relevant to the issue in this case.

The State Fund contends that it was the Legislature's intention when it amended Section 710 in 1987 to terminate those types of benefits awarded for future loss of earning power when a person retired or became eligible for full retirement benefits. It contends that it is clear from the 1987 amendment to Section 710 that the only kind of benefits the Legislature intended to continue beyond retirement age are those benefits such as medical benefits, indemnity benefits, and temporary total disability benefits which have as their purpose a claimant's physical restoration. The State Fund's argument continues that it was a mere legislative oversight that Section 710 was not amended in 1991 so that its language continued to track the amended language in Section 703. It is the State Fund's position that this Court should, by interpretation, accomplish what the Legislature did not by construing Section 710 in a way that requires termination of Russette's partial disability benefits, other than those related to physical impairment, on the date when Russette began receiving social security retirement benefits.

5

The Workers' Compensation Court agreed with the State Fund's position. It concluded that the Legislature's failure to amend Section 710 in 1991 was an obvious oversight. In response to Russette's argument that disability benefits should not be terminated when their termination was not expressly provided for by statute, the Workers' Compensation Court stated that:

> This is not a perfect world, and this court must assume the burden of determining whether the 1991 Montana Legislature intended to extend the revised permanent partial disability benefit to retired claimants.

On that basis, the Workers' Compensation Court went on to conclude, without any apparent reference to legislative history, that it was not the Legislature's intent to allow retired claimants to receive partial disability benefits.

However, we conclude that by its decision the Workers' Compensation Court amended the termination of benefits statute which the Legislature either failed or declined to amend. In this process, the trial court erred by doing what we have previously held cannot be done. In *Lester v. J & S Investment company* (1976) , 171 Mont. 149, 153, 557 P.2d 299, 301, we stated that "[i]n construing a statute, courts cannot insert what has been omitted. That is the responsibility of the legislature."

In *State v. Crane* (1989), 240 Mont. 235, 238, 784 P.2d 901, 903, we repeated our admonition that:

> In construing a statute, it is our function as an appellate court to ascertain and declare what in terms or in substance is contained in a statute and not insert what has been omitted. *Dunphy v. Anaconda* (1968) , 151 Mont. 76, 438 P.2d 660.

6

Neither can we, as easily as the Workers' Compensation Court, ascertain the Legislature'e intention in 1991. Prior to 1991, "wage supplement" benefits which were related to actual wage loss were terminated when an injured worker retired under the terms of Section 710. However, indemnity benefits based on physical impairment were continued. After 1991, there are no longer any "wage supplement" benefits, and partial disability benefits include physical impairment as their foundation. Actual wage loss is only one of several additional factors to be considered in determining the duration for which partial disability benefits are awarded. To sort out what was or was not the Legislature's intention under these circumstances would require sheer speculation on the part of the Court and is one reason for leaving the amendment of Section 710 to the Legislature.

For these reasons, we conclude that § 39-71-710, MCA (1987), does not provide for the termination of Russette's partial disability benefits which were awarded pursuant to § 39-71-703, MCA (1991), when he retired. Based on this conclusion, we reverse the judgment of the Workers' Compensation Court and remand for further proceedings consistent with this opinion and a determination of the duration over which Russette is entitled to permanent partial disability benefits.

_____
                            Justice

7

We concur:

_____
**Chief Justice**

_____

_____

_____
**Justices**

8

May 16, 1994

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Cameron Ferguson
HARTELIUS, FERGUSON & BAKER, P.C.
P. 0. Box 1629
Great Falls, MT 59403

Daniel J. Whyte
STATE COMPENSATION MUTUAL INSURANCE FUND
P. 0. Box 4759
Helena, MT 59604-4759

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy