No. 96-038

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

HARRY A. NESS,

     Petitioner and Appellant,

v.

ANACONDA MINERALS COMPANY, a
division of ATLANTIC RICHFIELD
COMPANY, INC.

     Respondent and Respondent.

FILED

NOV 25 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    Workers' Compensation Court
                State of Montana
                The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          R. Lewis Brown, Butte Legal Center, Butte, Montana

     For Respondent:

          Andrew J. Utick, Helena, Montana

Submitted on Briefs:  October 31, 1996

Decided:  November 25, 1996

Filed:

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Appellant Harry A. Ness (Ness) appeals the decision of the Workers' Compensation Court concluding that Ness was entitled to total disability benefits only until September 11, 1989, the date on which Anaconda Minerals Company (Anaconda) properly discharged its duties to investigate the extent of Ness's disability and to notify Ness of the results of that investigation. Anaconda cross appeals the Worker's Compensation Court's determination that Anaconda was not entitled to subrogate the benefits it had paid against Ness's settled third party claim, as well as the court's determination that Ness was entitled to attorney's fees based upon the award of permanent partial disability benefits. We affirm.

## ISSUES

Ness presents the following issue on appeal:

1. Did the Workers' Compensation Court err in concluding that the statutorily mandated notice of intent to reduce workers' compensation benefits validly may be given before the insurer has discharged its duty to investigate the extent of the claimant's disability?

In addition, Anaconda presents the following two issues on cross-appeal:

2. Did the Workers' Compensation Court err in concluding that Anaconda was not entitled to subrogate the benefits it had paid to Ness against his settled third-party claim?

2

3. Did the Workers' Compensation Court err in concluding that Ness was entitled to attorney's fees based upon the award of permanent partial disability benefits?

*FACTS*

Ness was injured in 1981 during the course of his employment for Anaconda. On the day in question, he was welding the belly pan of a D-8 Caterpillar when it fell and crushed him. Anaconda, which was self-insured, accepted liability and began paying temporary total disability benefits to Ness. Ness also instituted suit against the Caterpillar Tractor Company (Caterpillar), asserting that his injury was caused, at least in part, by a defective part on the Caterpillar he had been repairing.

After paying total disability benefits for over a year, Anaconda terminated total disability payments and began paying partial disability benefits, relying on a doctor's opinion that Ness had reached maximum healing and could return to light work. Anaconda notified Ness on November 22, 1982, of its intention to reduce his benefits from total to partial disability.

Ness petitioned the Workers' Compensation Court to reinstate total disability benefits, which that court refused to do. Ness then appealed the matter to this Court. In Ness v. Anaconda Minerals Co. (1993), 257 Mont. 335, 849 P.2d 1021 (Ness I), this Court determined that Anaconda's reduction of Ness's benefits was improper because Anaconda had not complied with the Coles test. While the first three elements of the Coles test had been fulfilled in Ness I, this Court noted that Anaconda had not given Ness the

3

required notice of the doctor's report or a copy thereof. We therefore held that

> [w]hen there is proof of the date on which the fourth element of the Coles test has been satisfied, there will be substantial evidence for the termination of claimant's total disability benefits, and the commencement of partial disability benefits.

Ness I, 849 P.2d at 1024.

On remand to the Workers' Compensation Court, Ness stipulated that he had received notice of the doctor's report on September 11, 1989. Accordingly, the Workers' Compensation Court determined that September 11, 1989, was the proper date for the reduction of Ness's benefits from total to partial.

Ness, however, argued that the letter he had received on November 22, 1982, by which Anaconda notified him of its intention to reduce his benefits, was insufficient notice because it was given before all of the Coles factors were fulfilled. He therefore contended that Anaconda was precluded from reducing his benefits until it re-notified him of its intention to do so after complying with the Coles test. The Workers' Compensation Court disagreed, concluding that the plain language of this Court's opinion in Ness I allowed Anaconda to reduce Ness's disability benefits from total to partial as of the date the fourth Coles factor was met. Ness appeals this conclusion.

In addition, Anaconda appeals the Workers' Compensation Court's determination that it cannot subrogate the benefits it paid to Ness against his third party claim. It also appeals the court's

determination that Ness is entitled to attorney's fees based on the award of permanent partial disability benefits.

*DISCUSSION*

1. Did the Workers' Compensation Court err in concluding that the statutorily mandated notice of intent to reduce workers' compensation benefits validly may be given before the insurer has discharged its duty to investigate the extent of the claimant's disability?

The Coles test ensures that the insurer has provided the claimant with the minimum information necessary to discharge its duty to investigate the extent of the claimant's disability. Compliance with the Coles test is a mandatory prerequisite for benefit reduction or termination. The Coles test requires:

> (1) a physician's determination that the claimant is as far restored as the permanent character of his injuries will permit;
> (2) a physician's determination of the claimant's physical restrictions resulting from an industrial accident;
> (3) a physician's determination, based on his knowledge of the claimant's former employment duties, that he can return to work, with or without restrictions, on the job on which he was injured or another job for which he is fitted by age, education, work experience, and physical condition; and
> (4) notice to the claimant of receipt of the report attached to a copy of the report.

Ness I, 849 P.2d at 1024.

Part of the confusion regarding this issue may have arisen because it involves two separate and distinct notice requirements. The fourth factor of the Coles test requires an insurer to notify a claimant of a physician's report regarding the nature and extent of the claimant's injury and the physician's opinion regarding the claimant's ability to return to work. We have held that, until such a physician's report is made and the claimant notified of it,

5

an insurer may not reduce a claimant's benefits because it has not acquired sufficient information to discharge its duty to investigate the extent of the claimant's disability. Wood v. Consolidated Freightways, Inc. (1991), 248 Mont. 26, 808 P.2d 502. This is the Coles test, and notice to the claimant is the fourth factor of this test. Ness I, 849 P.2d at 1024.

In addition, the insurer is statutorily required to provide the claimant with at least 14 days' notice of its intent to terminate benefits. Section 39-71-609, MCA, provides in part:

> if an insurer determines to deny a claim on which payments have been made under 39-71-608 during a time of further investigation or, after a claim has been accepted, terminates all biweekly compensation benefits, it may do so only after 14 days' written notice to the claimant, the claimant's authorized representative, if any, and the department. For injuries occurring prior to July 1, 1987, an insurer must give 14 days' written notice to the claimant before reducing benefits from total to partial.

Section 39-71-609(1), MCA (emphasis added). Ness does not argue that Anaconda's notice, when given, did not properly comply with the statute. Instead, he argues that Anaconda did not have the ability to reduce his benefits at the time it notified him of its intent to do so, and that, once it had the ability to do so, its former notice no longer was effective.

We fail to see why the passage of time should render the notice ineffective. The cases Ness cites in support of this theory are not on point. In Catteyson v. Falls Mobile Home Center (1979), 183 Mont. 284, 599 P.2d 341, notice was not given until nearly one month after benefits were terminated. This Court held that such notice was void because it did not follow the clear statutory

6

mandate that notice be given at least 14 days <u>before</u> termination of benefits. This Court has also held that if no statutory notice was <u>ever</u> given, the insurer will not be allowed to reduce or terminate benefits unless and until the statutory notice properly is given. Chagnon v. Tillman Motor Co. (1993), 259 Mont. 21, 855 P.2d 1002; Clark v. Hensel (1977), 127 Mont. 8, 560 P.2d 515. Ness cites no case in which this Court has held that the requisite statutory notice cannot be given until after the <u>Coles</u> test is completed or that, once properly given, the notice will somehow expire.

As Ness rightly noted, when the language of a statute is plain, unambiguous, direct, and certain, the statute speaks for itself and leaves nothing for this Court to construe. <u>Clark</u>, 560 P.2d at 516-17. Further, it is the function of an appellate court to ascertain what is actually contained in a statute, not to insert that which has been omitted. Russette v. Chippewa Cree Housing Authority (1994), 265 Mont. 90, 93-94, 874 P.2d 1217, 1219 (citations omitted). Accordingly, we decline to interpret § 39-71-609, MCA, as including an expiration provision which, on its face, it does not in fact contain. The statutory notice given to Ness on November 22, 1982, was both proper and effective. Anaconda had no duty to re-notify Ness of its intention to reduce his benefits once the <u>Coles</u> test was fulfilled, and the Workers' Compensation Court properly refused to impose such a duty upon it.

2. Did the Workers' Compensation Court err in concluding that Anaconda was not entitled to subrogate the benefits it had paid to Ness against his settled third-party claim?

7

Anaconda argues that the Workers' Compensation Court erred by refusing to allow it to subrogate the benefits it paid to Ness. It contends that Ness has been made whole as a matter of law because he settled with the third party, Caterpillar, for less than policy limits. Anaconda contends that this Court's prior case law mandates such a result.

In workers' compensation cases, the law in effect at the time of a claimant's injury establishes the claimant's substantive right to benefits. Williams v. Plum Creek Timber Co. (1995), 270 Mont. 209, 213, 891 P.2d 502, 504 (citing Plooster v. Pierce Packing Co. (1993), 256 Mont. 287, 291, 846 P.2d 976, 978; Buckman v. Montana Deaconess Hospital (1986), 224 Mont. 318, 321, 730 P.2d 380, 382). Therefore, the governing statutes in this case are § 39-71-412, MCA (1981) and § 39-71-414, MCA (1981).

Section 39-71-412, MCA (1981), which addressed a claimant's right to pursue a third party claim, provided:

> The right to compensation and medical benefits as provided by this chapter is not affected by the fact that the injury, occupational disease, or death is caused by the negligence of a third party other than the employer or the servants or employees of the employer. Whenever such event occurs to an employee while performing the duties of his employment and such event is caused by the act or omission of some persons or corporations other than his employer or the servants or employees of his employer, the employee or in case of his death his heirs or personal representative shall, in addition to the right to receive compensation under this chapter, have a right to prosecute any cause of action he may have for damages against such person or corporations.

Section 39-71-414, MCA (1981), which addressed an insurer's right to subrogation, provided in part:

8

> If an action is prosecuted as provided for in 39-71-412 or 39-71-413 and except as otherwise provided in this section, the insurer is entitled to subrogation for all compensation and benefits paid or to be paid under the Workers' Compensation Act. The insurer's right of subrogation is a first lien on the claim, judgment, or recovery.

Section 39-71-414(1), MCA (1981). However, while this latter statute set forth an insurer's entitlement to subrogation, it did not set forth whether this right to subrogation began before or after the claimant was made whole.

This Court determined that an insurer was not entitled to invade a claimant's paid third party claim via subrogation until the claimant had been made whole. See Brandner v. Traveler's Insurance Co. (1978), 179 Mont. 208, 587 P.2d 933; Hall v. State Compensation Insurance Fund (1985), 218 Mont. 180, 708 P.2d 234; Getten v. Liberty Mutual Insurance Co. (1989), 240 Mont. 90, 782 P.2d 1267. However, the Court also held that a claimant who had settled a third party claim for less than the policy limits would be deemed to have been made whole. Brandner, 587 P.2d at 938; Hall, 708 P.2d at 236; Getten, 782 P.2d at 1270-71. The rationale behind this determination was the assumption that no claimant would settle for a sum of money which was insufficient to make him or her whole. In Brandner, this Court reasoned:

> [i]t cannot logically be contended, therefore, that [a] claimant has not been made whole for his Workers' Compensation injury, when he, by his own voluntary action, has finally compromised his claim in full against the third-party tortfeasor.

Brandner, 587 P.2d at 938.

9

The decision in Hall carved out an exception to this rule by holding that it could not be assumed that a claimant had been made whole if he or she was forced to settle a third party claim for less than the policy limits. Consequently, the insurer's right to recoup its payments from the third party settlement under a theory of subrogation could only be exercised once the claimant was actually made whole. In Getten, this Court noted that the claimant's settlement had been voluntary, not forced. It therefore distinguished Hall and embraced the holding in Brandner.

In arguing that it should be allowed to exercise its right of subrogation, Anaconda relies almost entirely on the decisions in Brandner and Getten. Under the law as articulated in those two cases, Anaconda contends that it is entitled to subrogate because Ness settled his third party claim for less than the policy limits and did so voluntarily. Relying on the decisions in Brandner and Getten, Anaconda contends that Ness "was 'made whole' by [his] voluntary settlement, or he would presumably not have made such settlement."

In response, Ness contends that the rule relied upon by Anaconda and set forth in Brandner and Getten no longer is good law. We agree. While Anaconda attempts to distinguish these earlier cases from the later ones which vitiate the Brandner/Getten rule, there is no escaping the fact that both those cases have been substantively and unambiguously overruled.

In Zacher v. American Insurance Co. (1990), 243 Mont. 266, 794 P.2d 335, this Court stated:

10

We hold that where a workers' compensation claimant recovers against a third party an insurer has no subrogation rights until a claimant has been made whole for his entire loss and any costs of recovery, including attorney fees. . . . To the extent that Hall and Getten contain requirements which may be interpreted as adding to the foregoing holding, Hall and Getten are expressly overruled.

Zacher, 794 P.2d at 338 (emphasis added). In Francetich v. State Compensation Mutual Insurance Fund (1992), 252 Mont. 215, 827 P.2d 1279, this Court held:

[In Brandner] The Court also distinguished the situation in Brandner from the decision in Skauge [v. Montana States Telephone and Telegraph Co. (1977), 172 Mont. 521, 565 P.2d 628]. The basis for this distinction apparently was the Court's belief that the injured worker's voluntary settlement with the third party for less than the upper limits of the third party's insurance policy indicated that the worker had been fully compensated for his injuries. There is language in Brandner which might be viewed as indicating that subrogation might have been appropriate even if the injured worker had not been fully compensated for his injuries. To the extent that Brandner might be interpreted as allowing for subrogation prior to the injured worker receiving full compensation, it is overruled.

Francetich, 827 P.2d at 1284 (emphasis added).

Despite the clear language to the contrary, Anaconda attempts to distinguish both Zacher and Francetich is an attempt to preserve the applicability of the Brandner/Getten rule. It argues that Zacher does not necessarily conflict with Getten because, factually, both cases involve situations where the claimant was forced to settle for the third party's insurance policy limits. Ness, they remind us, was not forced to settle for policy limits. Instead, he voluntarily settled for a sum far below that dictated by Caterpillar's policy limits.

11

The holding in <u>Zacher</u>, set out above, does not distinguish between voluntary and non-voluntary settlements. Indeed, while noting that such a distinction had been made in past cases, this Court specifically chose not to rely on that distinction when articulating the rule regarding an insurer's right to subrogation. We will not narrow the impact of <u>Zacher</u> by inferring a limitation which the Court itself refused to place on its own holding. By its terms, the holding in <u>Zacher</u> refers to <u>all</u> cases where an insurer seeks to exercise a right to subrogation regarding a claimant's paid third party claim. And, by its terms, the holding specifically overrules <u>Getten</u> to the extent that it might add additional requirements to the holding in <u>Zacher</u>.

Similarly, Anaconda relies on the cited language in <u>Francetich</u> which states that:

> [t]he Court also distinguished the situation in <u>Brandner</u> from the decision in <u>Skauge</u>. The basis for this distinction apparently was the Court's belief that the injured worker's voluntary settlement with the third party for less than the upper limits of the third party's insurance policy indicated that the worker had been fully compensated for his injuries.

<u>Francetich</u>, 827 P.2d at 1284. Anaconda attempts to construe this language as the actual holding in <u>Francetich</u>, which it clearly is not. It is merely this Court again noting, as it did in <u>Zacher</u>, its own former reliance on the <u>Brandner</u>/<u>Getten</u> rule. The holding is contained in the next sentence, which notes that <u>Brandner</u> might be construed to indicate that subrogation may be allowed before the claimant has been made whole. To the extent <u>Brandner</u> might support

12

such a result, <u>Francetich</u> expressly overruled it. <u>Francetich</u>, 827 P.2d at 1284.

Further, we note the fundamental flaw in Anaconda's reliance on a rule which attempts to set forth when a claimant has been made whole as a matter of law. The question of whether an injured claimant has been made whole is a question of <u>fact</u>, dependent on the level of his or her physical recovery and the extent of his or her compensation through benefits paid and/or damages recouped.

In this case, Anaconda's own expert placed the amount of Ness's damages at $145,000, which was the lowest estimate presented. But Ness has not received benefits and settlement proceeds totalling $145,000, even if Anaconda's own estimate is presumed to be an accurate one and even if the entire $75,000 settlement from Caterpillar is credited to Ness. On this basis, the Workers' Compensation Court concluded that "the settlement with Caterpillar did not <u>in fact</u> represent the amount necessary to make claimant whole. Therefore, it does not entitle respondent as a matter of law to a subrogation interest in the settlement proceeds." (Emphasis added.)

The <u>Brandner</u>/<u>Getten</u> rule, which is the mainstay of Anaconda's subrogation argument, has been substantively overruled. To the extent that <u>Brandner</u> or <u>Getten</u> or their progeny indicate that the issue of whether a claimant has been made whole is a question of law, they are expressly overruled. The issue of whether a claimant has been made whole is a question of fact. Even Anaconda's own expert admits that Ness in fact has not been made whole to date.

13

Accordingly, the Workers' Compensation Court did not err in refusing to grant Anaconda the right to a subrogation interest in Ness's settlement with Caterpillar.

3. Did the Workers' Compensation Court err in concluding that Ness was entitled to attorney's fees based upon the award of permanent partial disability benefits?

Anaconda also contends that the Workers' Compensation Court erred by awarding Ness attorney's fees based on the award of permanent partial disability benefits. Anaconda argues that Ness's entitlement to permanent partial disability benefits was not the issue in this case. It further argues that Ness is not entitled to attorney's fees because Ness never specifically requested permanent partial disability benefits and, therefore, such benefits were not secured through the efforts of Ness's attorney. This argument is entirely without merit.

Ness pursued his claim in the Workers' Compensation Court with the assistance of an attorney, who instituted suit after Anaconda stopped paying benefits to Ness. The issue faced by the Workers' Compensation Court was what benefits, if any, Ness was entitled to receive. The attorney's efforts in securing Ness's award are not diminished simply because Ness did not specifically request a given type of relief.

The decision of the Workers' Compensation Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

14

_Troy Trieweiler_

_Karla M. Gray_

_W. William Leaphart_
Justices

November 25, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

R. Lewis Brown, Jr., P.C.
Butte Legal Center
Box 3647
Butte MT 59702-3647

Andrew J. Utick
Attorney At Law
Box 512
Helena MT 59624-0512

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy