JUSTICE HUNT
delivered the Opinion of the Court.
Appellant, Edward Killoy, Jr. (claimant), appeals the Workers’ Compensation Court’s order concluding that he was not permanently totally disabled and, therefore was not entitled to permanent total disability benefits as a result of his work-related injury.
We reverse and remand.
Appellant raises the following issues for review, which we restate as follows:
1. Did the Workers’ Compensation Court err in finding that claimant had a reasonable prospect of being able to tolerate his pain and physically perform at regular employment?
*90 2. Did the Workers’ Compensation Court err in failing to award claimant attorney’s fees and costs pursuant to §§ 39-71-611 and 39-71-2907, MCA?
FACTS
At the time of trial, claimant was 58 years old. He did not graduate from high school but did obtain a GED while in the Navy. Claimant has worked since 1962 as a heavy-duty mechanic for various employers. He went to work fiill-time for Rhone-Poulenc Basic Chemicals in 1991.
Claimant was injured in the course and scope of his employment on August 20,1993, when a heavy shaker screen fell on his head and jammed his neck. At the time of the injury, Rhone-Poulenc was insured by Reliance National Indemnity (Reliance). Reliance accepted liability for claimant’s injury and has paid out his medical benefits, as well as temporary total disability benefits.
Following his injury, claimant was initially examined by Dr. Knutsen. X-rays showed “[degenerative disc changes, spurring, and some narrowing of the lower foramina.” Dr. Khutsen prescribed physical therapy and medication, and directed that claimant be placed on light-duty.
On August 27,1993, claimant told Dr. Knutsen that the light-duty work was aggravating his neck. Dr. Khutsen advised him to take a full week off. He continued to treat claimant conservatively, prescribing bed rest, physical therapy, cervical traction, and medication. After his condition deteriorated, claimant was referred to Dr. Dewey for a second opinion.
Following an examination on October 14, 1993, Dr. Dewey determined that claimant suffered from “significant cervical canal stenosis at L4-5, 5-6, and 6-7 [sic]. There is degenerative disease at these levels, some neuroforaminal encroachment.” All parties agree that the reference to the lumbar disc, however, appears to be in error, and should refer to the cervical level. Dr. Dewey examined claimant again on November 9, 1993, at which time he reported that claimant was much improved and felt that decompression surgery was unwarranted. Dr. Dewey advised claimant to continue his stretching exercises and to return for a examination the following year to determine whether his spinal stenosis was progressing.
By November 16, 1993, both Dr. Knutsen and Dr. Dewey had released claimant to work full-time. Dr. Khutsen cautioned claimant to avoid any trauma to or hyperextension of his neck. Claimant returned to work, but experienced increasing pain. Dr. Khutsen took *91 claimant back off of work on December 14, 1993, until his condition improved. Claimant returned again on January 3, 1994.
On February 18, 1994, Claimant was pulling on a cable at work when the cable slipped and hit him in the face. This incident resulted in a violent jolting of his head which aggravated claimant’s original injury. After this, claimant felt he could no longer perform at his heavy labor position. Dr. Knutsen agreed but again sent claimant to Dr. Dewey for a second opinion.
On March 14,1994, Dr. Dewey wrote Dr. Knutsen a report regarding his examination of claimant. Dr. Dewey noted muscular symptoms in claimant’s neck, shoulder area, and at the base of his skull. He recommended a month of very aggressive stretching, supplemented by deep heat, ultrasound, and massage by a physical therapist. Dr. Dewey was unable to state whether claimant would be able to return to his time-of-injury job.
Dr. Dewey saw claimant again on April 18, 1994. Claimant’s condition had not improved, and Dr. Dewey concluded that claimant could not return to his time-of-injury position. Dr. Dewey identified several problems:
Cervical spondylosis; radiculopathy not identified; cervical stenosis, possible but not proven cervical radiculopathy; bilateral ulnar entrapment neuropathies; significant cervical myospasm ...
At this point, Dr. Dewey did not feel that claimant would get any better, he noted that claimant’s condition may in fact worsen over time.
Both at trial and by deposition, claimant testified that he experiences constant pain from the base of the skull, down the middle of the back through his shoulders. He has headaches and muscle spasms. Claimant’s level of pain is aggravated both by increased activity as well as by remaining stationary for any length of time. Claimant finds temporary relief from pain by using a stretching apparatus for his neck and performing stretching exercises on a daily basis. On “bad” days, he seeks relief through hot showers and a heating pad. Claimant has not worked since he re-aggravated his injury in February 1994.
In August 1993, Rhone-Poulenc retained a certified rehabilitation counselor to perform medical case management services relative to claimant’s injury. The counselor, Patricia Hink, submitted a preliminary report in which she encouraged claimant to apply for social security benefits which he subsequently applied for and received. Later, Hink identified several jobs as possibly suitable for claimant and submitted job analyses to Dr. Dewey for review. Dr. Dewey *92 approved of four of the positions, stating that if a patient such as claimant had expressed a desire to try one of these positions, that, in his opinion, these positions could be “safely attempted” without risk. Dr. Dewey, however, did not offer his opinion as to whether claimant was capable of doing these positions, stating instead that only the patient was able to answer that question.
Based on Hink’s “Employability Assessment Report,” the insurer converted claimant’s benefits from temporary total disability to permanent partial disability on May 27,1995. On June 9,1995, claimant petitioned the Workers’ Compensation Court for a hearing. After the hearing in August 1995, the Workers’ Compensation Court found that claimant’s testimony regarding his pain was credible. However, the court was not persuaded that his pain would necessarily preclude claimant from working. The court then concluded that RhonePoulenc had met its burden of establishing that claimant had a reasonable prospect of “physically performing regular employment.” The Workers’ Compensation Court concluded that claimant was not permanently totally disabled and, therefore was not entitled to corresponding benefits.
Claimant appeals from that decision.
DISCUSSION
Did the Workers’ Compensation Court err in finding that claimant had a reasonable prospect of being able to tolerate his pain and physically perform at regular employment?
Decisions of the Workers’ Compensation Court must be based on substantial credible evidence. O’Brien v. Central Feeds (1990), 241 Mont. 267, 271, 786 P.2d 1169, 1172. The court’s findings of fact will be upheld if they are supported by substantial credible evidence. Wunderlich v. Lumbermens Mutual Casualty Co. (1995), 270 Mont. 404, 408, 892 P.3d 563, 566.
The law in effect at the time of the injury governs the claimant’s entitlement to benefits. Buckman v. Montana Deaconess Hospital (1986), 224 Mont. 318, 321, 730 P.2d 380, 382. Claimant was injured on August 20, 1993, therefore, the 1993 version of the Workers’ Compensation Act governs this case. The claimant bears the burden of proving he or she was permanently totally disabled. Dumont v. Wickens (1979), 183 Mont. 190, 201, 598 P.2d 1099, 1105.
The definition of permanent total disability reads as follows:
“Permanent total disability” means a condition resulting from injury as defined in this chapter, after a worker reaches maximum *93 medical healing in which a worker does not have a reasonable prospect of physically performing regular employment. Regular employment means work on a recurring basis performed for remuneration in a trade, business, profession, or other occupation in this state. Lack of immediate job openings is not a factor to be considered in determining if a worker is permanently totally disabled.
Section 39-71-116(13), MCA (1993) (emphasis added).
In its decision, the Workers’ Compensation Court found that appropriate jobs existed for claimant. The rehabilitation counselor, Hink, identified several jobs as possibly suitable for regular employment: lubrication technician, sewer (sewing backpacks), shoe repair person, cashier, motel clerk, lumber salesperson, and meter reader. Of these positions, the Workers’ Compensation Court narrowed the list, and determined that claimant was physically capable of performing as either a motel clerk or a cashier.
At trial, claimant disputed his ability to perform any of the suggested positions. According to his testimony, his pain makes him uncontrollably unpleasant. Claimant specifically contended that because of his pain it would be difficult for him to be confined to the limited space provided to a cashier, or to carry luggage if employed as a motel clerk.
The Workers’ Compensation Court did not dispute that claimant was in pain and that activity increased his pain, rather the court was not convinced that this would prevent him from working. Instead, the court found claimant to be a positive and up-beat person who had “worked all his life and has a good work ethic, and [the court] was persuaded [that claimant] would cope with his pain if he was forced to do so.” Ultimately, the court found that claimant had a reasonable opportunity for regular employment.
On appeal, claimant argues that the Workers’ Compensation Court erred in this finding. Claimant asserts that it is the law in Montana that pain can be considered when determining whether a claimant is permanently totally disabled. Robins v. Anaconda Aluminum Co. (1978), 175 Mont. 514, 521-22, 575 P.2d 67, 72 and Jensen v. Zook Brothers Construction Co. (1978), 178 Mont. 59, 63, 582 P.2d 1191, 1193.
In Robins, the claimant fractured his skull and other bones after falling 16 to 18 feet. He returned to work, then fell a second time and injured his back. There, one doctor stated that the claimant could work, if he could endure the pain. The other doctor testified that the claimant could not work because he could not take the pain. In *94 affirming the lower court, this Court held that pain must be considered as a factor when determining disability. Robins, 575 P.2d at 71.
In Jensen, the claimant crushed his dominant hand. The claimant testified that he had pain up his arm into his elbow. Following Robins, this Court held that the evidence showing that the claimant could not work without pain or endure pain while working constitutes substantial evidence supporting a finding of permanent disability. Jensen, 582 P.2d at 1193.
In its decision, the Workers’ Compensation Court considered both Jensen and Robins, nevertheless, the court determined that under recent revisions to the permanent total disability statute, pain is only one factor to be considered when determining a claimant’s disability. Metzger v. Chemetron Co. (1984), 212 Mont. 351, 354, 687 P.2d 1033, 1035. Under 1993 revisions to the definition of permanent total disability, the court noted that the claimant must prove that he or she has “no reasonable prospect of physically performing regular employment.” Section 39-71-116 (13), MCA.
This Court agrees with the Workers’ Compensation Court’s conclusion that pain is only one factor to be considered when reaching a determination of disability. As was also aptly pointed out by the court in this case, “Pain ... may be so severe for some individuals that it renders them physically incapable of performing their job duties.
In its order, the Workers’ Compensation Court relies on the “medical evidence concerning permanent total disability.” This medical evidence, the court states, was provided by Dr. Dewey, “who approved of five positions.” The court concluded further, that Dr. Dewey’s testimony did not support claimant’s claim for disability. However, where medical testimony is offered by deposition, this Court is in as good a position as the Workers’ Compensation Court to determine its weight. Caekaert v. State Comp. Mutual Ins. Fund (1994), 268 Mont. 105, 110, 885 P.2d 495, 498. Although Dr. Dewey did approve of several of the suggested positions, this was not the extent of the medical testimony.
In his deposition, Dr. Dewey specifically qualified his approval and made no determination concerning claimant’s ability to cope with pain. At trial, the court pointed this out:
THE COURT: ... [Dr. Dewey] basically said medically [claimant’s] not going to be at risk. In other words, he’s not at risk with further injuring himself in these jobs, but whether or not he performs them is really up to him.
*95 Dr. Dewey testified that claimant could safely attempt the jobs without risk, his opinion does not support a finding that claimant was physically capable of performing regular employment.
Furthermore, Dr. Dewey testified that he considered claimant’s response to his neck injury as “appropriate.” Accordingly, Dr. Dewey testified that he would defer to claimant regarding his ability to tolerate the pain associated with a suggested position. Therefore, according to the medical opinion of Dr. Dewey, the claimant in this case stands in the best position to judge his abilities.
Other medical evidence was provided through the records of Dr. Knutsen. Throughout his records, Dr. Knutsen notes that claimant experienced chronic neck pain. Following claimant’s re-aggravation in February, Dr. Knutsen noted that he did not think claimant would be able to return to his regular job. In a letter to the insurer, Dr. Knutsen wrote that “[s]ometimes the slightest little neck jolt or bump on the head will markedly aggravate his chronic neck pains.”
Following Jensen and Robins, this Court must consider the evidence regarding claimant’s pain when reviewing the Workers’ Compensation Court’s determination of disability. In this case, the medical evidence does not support the court’s finding that claimant was capable of working without pain or that he was capable of enduring his pain while working. See Jensen, 582 P.2d at 1192.
We conclude that the record does not contain substantial credible evidence supporting a finding that claimant has a reasonable prospect of physically performing regular employment. In this matter, not only did Dr. Dewey testify that he considered claimant’s response to his injury as appropriate, the court also found that “[claimant’s] testimony regarding his pain was credible.” Considering this, both at trial and in his deposition, claimant testified that he experiences constant pain from the base of the skull, down the middle of the back through his shoulders. He described headaches and muscle spasms. His level of pain increases if he engages in any increased activity or if he is stationary for any length of time. On “bad” days, he seeks relief through hot showers and uses a heating pad.
It is evident from this testimony that claimant’s pain would prevent him from holding down regular employment. This Court has held that a trial court may not disregard uncontradicted credible evidence. Burns v. Plum Creek Timber (1994), 268 Mont. 82, 85, 885 P.2d 508, 510 (citing McGuire v. American Honda Co. (1977), 173 Mont. 171, 566 P.2d 1124.)
*96 In its order denying claimant’s motion for rehearing, the court raises concerns that because pain is subjective, claimants would unilaterally determine that they cannot work. That may or may not be the case but that is not the situation here. Claimant’s testimony was corroborated by medical evidence offered by both Dr. Dewey and Dr. Knutsen. Furthermore, claimant’s testimony regarding his pain was found to be credible by both Dr. Dewey and the court.
In summary, we conclude that uncontroverted testimony presented at trial supports a finding that claimant is unable to perform at any óf the suggested positions without experiencing substantial pain. Furthermore, we conclude that the Workers’ Compensation Court erred in concluding that claimant is capable of tolerating his pain and physically performing at regular employment.
Having concluded the claimant is entitled to benefits, we remand this case for a determination of attorney’s fees and costs pursuant to §§ 39-71-611 and 39-71-2907, MCA.
Reversed and remanded.
JUSTICES TRIEWEILER, NELSON and LEAPHART concur.