No. 99-360

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 196N

IN RE THE MARRIAGE OF

JOAN LAUFER,

Petitioner and Respondent,

and

GARY LAUFER,

Respondent and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Byron W. Boggs, Attorney at Law, Missoula, Montana

For Respondent:

John H. Sytsma, Attorney at Law, Seeley Lake, Montana

Submitted on Briefs: January 6, 2000

Decided: July 18, 2000

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Gary Laufer (Gary) appeals from the Findings of Fact, Conclusions of Law and Order entered by the Fourth Judicial District Court, Missoula County, dissolving the marriage of Gary and Joan Laufer (Joan) and dividing the marital assets. We reverse in part and remand.

¶3 The issue on appeal is whether the District Court abused its discretion in distributing the marital property.

*BACKGROUND*

¶4 In July of 1984, Gary entered into a land contract to purchase a five and one-half acre lot in Condon, Montana, for $18,000. He made a $2,500 down payment and $100 monthly payments thereafter. Gary built and lived in a one-room cabin with a loft, porch and outhouse; the cabin had electric power service and a "crude septic system," but no water source nearby. Gary also cleared a driveway to the cabin.

¶5 Joan moved into the cabin with Gary during the summer of 1985. According to Gary, he also built a storage shed and wood shed on the property prior to marrying Joan. Joan maintained that the storage shed was started when she moved into the cabin, but she helped roof it and build the wood shed.

¶6 Gary and Joan married on September 20, 1985. Gary worked as a heavy machine operator throughout the marriage except during the winters, when construction business slowed. Joan was a homemaker. She received proceeds from her deceased daughter's

estate and an inheritance from her grandfather during the

Marriage.

¶7 Gary and Joan made additional improvements to the Condon property during the marriage, including clearing a new driveway; building a snowmobile shed, studio, greenhouse and garage; and expanding the one-room cabin. In 1994, the property was refinanced with a $20,000 loan to pay off the original land contract and build the garage.

¶8 Gary and Joan separated in January of 1998, at which time $6,000 remained owing on the 1994 loan. Joan filed a petition for dissolution of marriage four months later.

¶9 The District Court referred the case to a Special Master who ordered the parties to participate in a settlement conference. They reached a settlement agreement but, when Gary failed to obtain financing to pay Joan the agreed amount for her share of the marital property, Joan requested an adversarial hearing before the Special Master.

¶10 After the hearing, the Special Master made Recommended Findings of Fact and Conclusions of Law. After extensive findings and conclusions, the Special Master ordered Gary to pay Joan $39,550 for her share of the increased value of the real property and $6,500 to equalize the distribution of other marital assets and proceeds, less $1,000 for her share of the debt on the real property, for a total of $45,050.

¶11 Gary objected to the Special Master's recommended findings and conclusions pursuant to Rule 53(e)(2), M.R.Civ.P., urging that the property distribution was not fair and equitable. Following a hearing, the District Court entered findings of fact, conclusions of law and an order dissolving the marriage and distributing the marital property. Pursuant to Rule 53(e)(2), M.R.Civ.P., it also implicitly adopted all of the Special Master's findings and conclusions not expressly modified or rejected. The District Court ultimately ordered Gary to pay Joan $45,050 as her share of the marital property not separately allocated.

¶12 Gary appeals.

## STANDARD OF REVIEW

¶13 We review a district court's findings of fact underlying a division of marital property to determine whether they are clearly erroneous. *In re Marriage of Engen*, 1998 MT 153, ¶ 26, 289 Mont. 299, ¶ 26, 961 P.2d 738, ¶ 26 (citation omitted). If the findings are not

clearly erroneous, we review the court's distribution of marital property for abuse of discretion. *Marriage of Engen*, ¶ 26 (citation omitted).

## *DISCUSSION*

¶14 **Did the District Court abuse its discretion in distributing the marital property?**

¶15 Section 40-4-202, MCA, sets forth the guidelines for distributing property in a dissolution action and provides in relevant part as follows:

> (1) In a proceeding for dissolution of a marriage . . . the court, without regard to marital misconduct, shall . . . finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both. . . . In dividing property acquired prior to the marriage . . . [and] the increased value of property acquired prior to marriage . . . , the court shall consider those contributions of the other spouse to the marriage, including:
>
> (a) the nonmonetary contribution of a homemaker; [and]
>
> (b) the extent to which such contributions have facilitated the maintenance of this property[.]

¶16 Gary asserts a number of errors in the District Court's distribution of the marital property which, according to him, amount to an abuse of discretion. We address each in turn.

¶17 Gary first contends the District Court's finding that his premarital investment in the real property was $3,700 is clearly erroneous, given his uncontradicted evidence that the premarital value of the property was $45,000. As a result, he urges the District Court abused its discretion with regard to the value of the real property he brought into the marriage.

¶18 It is undisputed that the real property was Gary's premarital property, that the value of that property increased during the marriage, and that Joan contributed to the maintenance and appreciation of the property during the marriage. Thus, under § 40-4-202, MCA, the court was authorized to equitably divide the increased value of the premarital property

between Gary and Joan. In doing so, however, it must first determine the increase in value, which necessarily requires findings of both Gary's premarital interest in and the current value of the real property.

¶19 With regard to the finding regarding Gary's premarital investment, Gary testified he made a $2,500 down payment on the property in the summer of 1984 and monthly payments of $100 thereafter for about a year prior to the marriage. Thus, his premarital monetary investment was approximately $3,700 and the court's finding is supported by substantial evidence. The question remains, however, whether Gary's premarital investment necessarily equates to his premarital interest in the real property.

¶20 Gary testified at the hearing before the Special Master that the premarital value of the real property and improvements--including the two sheds--was $45,000. The Special Master expressly rejected his valuation testimony, however, observing that his valuation estimates were not corroborated by any independent evidence and stating "earlier false representations to this Court and to counsel have tainted [Gary's] credibility." Therefore, while acknowledging that Gary's improvements added value to the real property, the Special Master concluded that, without sufficient evidence to substantiate the real property's premarital value, assigning those improvements a value would "be mere speculation." On that basis, the Special Master concluded that the premarital value of the real property was best equated to Gary's $3,700 premarital financial investment.

¶21 At the subsequent District Court hearing, Gary presented testimony from a real estate appraiser and the appraiser's written report. The court admitted the report--which valued the real property and improvements at $45,000 at the time of Gary and Joan's marriage in September of 1985--into evidence. On cross-examination, the appraiser reduced the value by $1,000. The court interrogated the appraiser at some length and portions of that interrogation appear to reflect skepticism regarding the reliability of the valuation. However, the District Court ultimately made no independent findings regarding the value of Gary's premarital real property. Indeed, it did not refer to the appraiser's testimony or report in its findings and conclusions. Instead, it entered a finding--mirroring that of the Special Master--that Gary's premarital investment in the real property was $3,700.

¶22 The problem with the District Court's finding is that it does not determine Gary's premarital interest--that is, the premarital value less any attendant debt--in the real property. *See In re Marriage of Hogstad* (1996), 275 Mont. 489, 497, 914 P.2d 584, 589. Moreover, having admitted additional evidence regarding the premarital value of the real

property at the hearing, the record before the court no longer supported the Special Master's rejection of Gary's valuation as uncorroborated by independent evidence.

¶23 A district court may not disregard uncontradicted credible evidence. *Killoy v. Reliance Nat. Indem.* (1996), 278 Mont. 88, 95, 923 P.2d 531, 535 (citation omitted). Here, the District Court admitted the appraiser's testimony and report and, although the appraiser reduced the appraisal on cross-examination, the testimony was uncontradicted. Without findings by the District Court regarding the appraisal and its credibility, we cannot determine whether the District Court rejected the appraisal and if so, why, or whether it merely overlooked that valuation evidence.

¶24 We conclude that the District Court's implicit adoption of the Special Master's conclusion that the premarital value of the real property was best equated to Gary's $3,700 premarital investment--without any comment on or evaluation of the appraiser's evidence-- is an abuse of discretion necessitating remand. On remand, the District Court must expressly determine Gary's premarital interest in the real property and improvements, use that amount to calculate the increased value of the real property during the marriage and, if necessary, modify the property distribution accordingly.

¶25 Gary next contends that the District Court abused its discretion in allocating the remaining debt on the real property. In doing so, Gary urges that the court failed to make a finding regarding the debt on the property at the time the parties separated, that the debt was $6,000 and that the court was required to deduct that amount from the value of the real property.

¶26 Although the District Court did not make any findings regarding the debt on the real property, the Special Master found that it was approximately $2,000 at the time of the hearing before her and the District Court essentially adopted the Special Master's finding. With regard to Gary's contention that the debt should be valued at $6,000, the general rule is that valuation should be made at or near the time of the dissolution hearing. *See In re Marriage of Hammill* (1987), 225 Mont. 263, 267, 732 P.2d 403, 406 (citation omitted). The Special Master followed this general rule--valuing the debt at the time of the hearing before her--and Gary advances no authority under which using that time, rather than the earlier date when the parties separated, was error. Moreover, the Special Master divided the $2,000 debt equally in determining the overall amount to which Joan was entitled. On the record before us, Gary has failed to establish error in this regard.

¶27 Gary next contends that the District Court abused its discretion when it added $3,650 to Joan's share of the marital estate. In doing so, he urges that the District Court failed to make a finding explaining the basis for this amount.

¶28 It is true that the District Court indicated its award of $45,050 to Joan is $3,650 over one-half the value of the real property. However, the District Court also specifically referenced the Special Master's overall allocation. Therefore, while the District Court failed to explain the basis of the $3,650, it implicitly adopted the Special Master's distribution of the parties' marital property, which required Gary to pay Joan $45,050.

¶29 The manner in which the Special Master arrived at $45,050 is detailed in the Special Master's recommended findings and conclusions. The Special Master determined the current value of the real property at $82,800, subtracted Gary's premarital investment of $3,700 and divided the resulting $79,100 increase in value equally to determine that one-half of the marital value of the real property is $39,550. The Special Master also equally divided the value of the household furnishings and the proceeds from the sale of certain marital assets, as well as the $2,000 debt remaining on the real property at the time of the hearing. In summary, the Special Master determined that Gary owed Joan $39,550 for her share of the increased value of the real property and $6,500 to equalize the distribution of other marital assets and proceeds, less $1,000 for her share of the debt on the real property, for a total of $45,050.

¶30 We conclude that, based on its implicit adoption of the Special Master's findings and conclusions, the District Court did not abuse its discretion when it failed to make a specific finding explaining the basis for its statement that the award of $45,050 to Joan is $3,650 over one-half the value of the home. On remand, of course, the District Court's determination of Gary's premarital interest in the real property, and any related recalculation of the increased value during the marriage, may require modification of the overall $45,050 award to Joan. As a final note, we observe that the District Court misstated that one-half the value of the home is $41,100 rather than $41,400; it properly indicated, however, that $45,050 is $3,650 over one-half the value of the real property.

¶31 Gary also challenges two of the District Court's findings of fact relating to Joan's contributions to the marital estate. We examine those findings and Gary's arguments in turn.

¶32 The District Court found that Joan contributed in excess of $40,000 to the "marital

estate" from an inheritance and proceeds from her daughter's estate. The Special Master's corresponding finding was that Joan contributed more than $40,000 in cash "to the marital home and family." In this regard, Joan presented evidence at the hearing before the Special Master regarding expenditures of the moneys she received from those sources. She testified that, among other things, she paid taxes and Gary's credit card bills; purchased groceries, a snowmobile, garden supplies and garage doors; contributed to the restoration of an antique automobile which Gary sold after the parties' separation, but for which he could produce no documentation; and paid medical bills and other general living expenses.

¶33 Gary contends that the District Court's finding is clearly erroneous because it treats expenditures for consumables as contributions to the marital estate. We agree. While the record before us supports the Special Master's finding relating to Joan's financial contributions to the "marital home and family," most of those contributions went to consumables rather than to the property and assets to be equitably apportioned under § 40-4-202, MCA. Since the District Court did not directly restore any of Joan's contributions to her during its apportionment of the marital estate, however, its error in characterizing Joan's contributions as made to the "marital estate" is harmless. *See* Rule 61, M.R.Civ.P.; *In re Marriage of Anderson* (1986), 220 Mont. 477, 481, 717 P.2d 11, 14.

¶34 The District Court also found that Gary and Joan contributed equally to the marital estate. Gary contends that, as written, the District Court's finding is clearly erroneous because it fails to consider his premarital interest in the real property. We agree. The question remains, however, whether this error was reversible.

¶35 Gary concedes that the finding would have been accurate had it been limited to Joan's contribution to the increased value of the real property during the marriage. We agree and, indeed, we observe that the Special Master's corresponding determination was that Joan "contributed equally to the increase in value of the marital estate during the thirteen (13) year marriage."

¶36 As discussed above, the District Court adopted the Special Master's overall distribution of the marital estate which properly subtracted Gary's then-determined premarital interest in the real property. Therefore, subject to determination on remand of Gary's premarital interest in the real property, and any related recalculation of increased value and modification of the dollar amount of the equal distribution of that increase, we conclude the District Court's error is harmless.

¶37 Reversed in part and remanded for further proceedings consistent with this Opinion.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ WILLIAM E. HUNT, SR.