No. 00-734

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 11N

PHILLIP DAVIS,

Petitioner and Appellant,

v.

CREDIT GENERAL INSURANCE COMPANY,

Defendant and Respondent,

and

UNITED STAFFING, INC.,

Employer.

APPEAL FROM: Montana Workers' Compensation Court

The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Marvin L. Howe; Navratil & Herring, Glendive, Montana

For Respondent:

Joe C. Maynard, James R. Hintz; Crowely, Haughey, Toole

& Dietrich, Billings, Montana

Submitted on Briefs: August 16, 2001
Decided: January 29, 2002

Filed:

_____

Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Phillip Davis (Davis) appeals from the Findings of Fact, Conclusions of Law and Judgment entered by the Workers' Compensation Court (WCC) in his claim against Credit General Insurance Company (Credit General). We affirm.

¶3 We address the following issues:

¶4 1. Did the WCC err in finding Credit General did not wrongfully terminate Davis' temporary total disability benefits?

¶5 2. Did the WCC err in finding that Davis is not permanently totally disabled and not entitled to treatment at a pain clinic?

¶6 3. Is Davis entitled to attorney fees and a statutory penalty?BACKGROUND

¶7 On August 29, 1995, Davis sustained an injury to his right shoulder after he fell while tightening straps that secured a load he was carrying on his truck. At the time of the accident, Davis was employed by United Staffing, Inc. which was insured for workers' compensation purposes by Credit General. Credit General accepted liability for the

accident and immediately began paying Davis temporary total disability and medical benefits. Davis' primary treating physician, Dr. Lawrence Toder (Dr. Toder), diagnosed a torn rotator cuff and operated on Davis' right shoulder in November of 1995.

¶8 After the surgery, Davis underwent physical therapy with Richard Smith (Smith) and demonstrated steady improvement in his right shoulder. In April of 1996, Smith concluded Davis was able to return to light-duty work, but Davis did not return to work. In September of 1996, at Credit General's request, Davis saw Dr. Stephen G. Powell (Dr. Powell) for a second opinion. Dr. Powell expressed concern about another possible rotator cuff tear that was hindering Davis' recovery. Dr. Toder concurred and recommended Davis undergo a second surgery. Davis declined.

¶9 In December of 1996, Credit General consulted Dr. Powell and ascertained Davis had reached maximum medical improvement because he was unwilling to undergo further surgery. Davis reconsidered surgery and consulted Dr. Toder and Dr. Robert Seim (Dr. Seim), eventually scheduling the second surgery for February of 1997. Davis subsequently cancelled this surgery and did not see Dr. Toder again until shortly before a determination of his disability status in 1999. In March of 1997, the Social Security Administration awarded Davis disability benefits retroactive to April 1996. Smith examined Davis again in June of 1997 and found that his condition had deteriorated, but approved various jobs that were within Davis' capabilities. Dr. Powell reviewed the jobs recommended by Smith and determined Davis was capable of employment.

¶10 In August of 1997, Davis moved to Jamestown, North Dakota. In November of that year Credit General sent Davis a 14-day notice of termination of temporary total disability benefits and conversion to permanent partial disability benefits based on Dr. Powell's earlier conclusion that Davis had reached maximum medical improvement.

¶11 Davis filed his first petition in the WCC in July of 1998. In August of 1998, Credit General hired a private agency to conduct video surveillance of Davis. The surveillance tape shows Davis working in his garden using his right arm to shovel, pull-start a rototiller, rototill, carry water, and pull weeds. Shortly thereafter, in August of 1998, he submitted to a medical examination by Dr. Thomas L. Schumann (Dr. Schumann). After examining Davis and viewing the video surveillance tape, Dr. Schumann concluded Davis might be exaggerating his pain and limited mobility symptoms. Dr. Schumann considered Davis to be at maximum medical improvement without further surgery and approved nine jobs recommended by a rehabilitation counselor.

¶12 In November of 1998, Davis saw Dr. Howard T. Berglund (Dr. Berglund), an orthopedic surgeon in Fargo, North Dakota. Dr. Berglund feared there might be another tear in Davis' rotator cuff and recommended a second surgery on Davis' shoulder. In a deposition taken in April of 1999, shortly before trial, Dr. Toder continued to recommend further surgery for Davis, stating the procedure was safe and had a sixty to seventy-five percent chance of improving Davis' condition. Dr. Toder also concluded Davis was capable of performing sedentary work.

¶13 Davis' petition proceeded to trial in the WCC on April 26, 1999. On the second day of trial, Davis informed the court he was willing to consider additional surgery with Dr. Berglund. The court subsequently granted Davis' motion to dismiss his petition without prejudice, and Dr. Berglund performed the second surgery on Davis' shoulder in June of 1999. Davis continued to report pain thereafter, but Dr. Berglund opined that the surgery had been successful and no medical explanation for Davis' pain was evident.

¶14 Davis filed a second petition in the WCC in July of 1999 on the grounds he was permanently totally disabled and Credit General had wrongfully terminated his temporary total disability benefits in November of 1997. Dr. Berglund referred Davis to Dr. Michael Webster (Dr. Webster) in Jamestown, North Dakota, for follow-up treatment in October of 1999, after the second surgery. Both Dr. Berglund and Dr. Webster subsequently recommended Davis seek treatment at a pain clinic to learn to cope with his chronic pain.

¶15 In March of 2000, at Credit General's request, Davis was examined by Dr. Gregory Peterson (Dr. Peterson). After reviewing Davis' medical records, watching the video surveillance tape and physically examining Davis, Dr. Peterson concluded Davis' complaints of pain and disability were markedly out of proportion to objective medical findings. Dr. Peterson also found Davis' statements regarding pain and his behavior during the examination were exaggerated, and that Davis lacked motivation to obtain improvement and likely would not benefit from a comprehensive pain program or further rehabilitation. Dr. Peterson also noted Davis was capable of employment with his physical limitations.

¶16 Davis was evaluated at a pain clinic in March of 2000. Dr. Steven Berndt found his overall symptoms seemed to be somewhat exaggerated. Davis was given an injection to alleviate his pain which he later claimed "didn't do much for the pain."

¶17 A second trial was held in the WCC on April 26, 2000. The court subsequently

entered its Findings of Fact, Conclusions of Law and Judgment. It determined Davis to be "not credible" and found he is not entitled to permanent total disability benefits, further temporary total disability benefits, treatment at a pain clinic or further rehabilitation benefits. Davis appeals.

## STANDARD OF REVIEW

¶18 We review the WCC's findings of fact to determine whether they are supported by substantial credible evidence and its conclusions of law to determine whether the interpretation of the law is correct. *Schimmel v. Montana Uninsured Employers Fund*, 2001 MT 280, ¶ 5, 307 Mont. 344, ¶ 5, __P.3d__, ¶ 5. In workers' compensation cases, the law in effect at the time of the claimant's injury establishes the claimant's substantive right to benefits. *Ness v. Anaconda Minerals Co.* (1996), 279 Mont. 472, 478, 929 P.2d 205, 209. As a result, the 1995 statutes and cases interpreting those statutes apply in the present case.

## DISCUSSION

¶19 1. Did the WCC err in finding Credit General did not wrongfully terminate Davis' temporary total disability benefits?

¶20 The WCC found that Davis' temporary total disability benefits were not improperly terminated because he reached maximum medical healing prior to their termination. Davis advances alternative arguments that he had not reached maximum medical improvement by the time Credit General terminated his temporary total disability benefits in late 1997 and, therefore, that the termination of his benefits was improper.

¶21 Davis' main assertion is that Credit General was obligated to seek a maximum medical improvement determination from his primary treating physician, Dr. Toder, and, consequently, that Dr. Powell's determination was not adequate. Davis fails to advance any authority, as required by Rule 23(a)(4), M.R.App.P., to support his contention, however. Accordingly, we refuse to consider this matter further. *See In re Estate of Bayers*, 1999 MT 154, ¶ 19, 295 Mont. 89, ¶ 19, 983 P.2d 339, ¶ 19.

¶22 In his opening brief, Davis also fleetingly mentions his temporary total disability benefits should not have been terminated in November of 1997, even though he was reluctant to have surgery on his shoulder at that time. Pursuant to Rule 23(a)(4), M.R.App.

P., in order for Davis to properly raise an issue in his opening brief he must list his contentions with respect to the issues presented and the reasons therefor, with citations to the authorities relied on. Davis' argument fails to comply with Rule 23(a)(4), M.R.App.P. "[I]t is not this Court's obligation to conduct legal research on appellant's behalf, to guess as to his precise position, or to develop legal analysis that may lend support to his position." *Estate of Bayers,* ¶ 19 (citation omitted). We decline, therefore, to address this contention further.

¶23 Substantial credible evidence of record supports the WCC's finding that Davis' temporary total disability benefits were not improperly terminated. Substantial evidence is "more than a mere scintilla of evidence but may be less than a preponderance of the evidence." *Taylor v. State Compensation Ins. Fund* (1996), 275 Mont. 432, 437, 913 P.2d 1242, 1245 (citation omitted). Here, the evidence of record, including Dr. Powell and Dr. Toder's testimony, indicates Davis had reached maximum medical improvement prior to the termination of his temporary total disability benefits. In addition, Dr. Powell determined that Davis could return to work as a forklift operator or a toll booth operator with some modifications. Smith, Davis' physical therapist, also concluded Davis could return to work as a transport driver, a bus driver or a toll booth operator with some modifications. Accordingly, we conclude the WCC's finding was supported by substantial credible evidence.

¶24 We hold, therefore, the WCC did not err in finding Credit General did not wrongfully terminate Davis' temporary total disability benefits.

¶25 2. Did the WCC err in finding that Davis is not permanently totally disabled and not entitled to treatment at a pain clinic?

¶26 The WCC found Davis is not permanently totally disabled based on record evidence that Davis is physically capable of performing regular work and has a reasonable prospect of finding regular work within his physical capabilities. Davis contends that, as a result of his pain, in combination with his low education level, age and exclusive work as a truck driver, he is unable to perform regular employment and is, therefore, permanently totally disabled.

¶27 In this regard, Davis correctly argues pain is one factor that can be considered when determining whether a claimant is permanently totally disabled and that, in some instances, pain may be so severe that it renders a claimant physically incapable of

performing job duties. He relies on *Killoy v. Reliance National Indemnity* (1996), 278 Mont. 88, 923 P.2d 531, which is factually distinguishable from the present case. There, the claimant's testimony regarding pain was corroborated by medical evidence given by two of his treating physicians and was found to be credible by his doctor and by the WCC. *See Killoy,* 278 Mont. at 96, 923 P.2d at 535, 536.

¶28 In the present case, Davis' treating physicians have not been able to find any objective medical reason for his on-going reports of pain. More importantly, the WCC found Davis to be "not credible" with respect to the pain he claimed to be experiencing. The record contains suggestions from several doctors that Davis' pain reactions were exaggerated. In addition, the court noted the inconsistency between Davis' claims of constant pain and inability to work and his garden work as depicted on the video surveillance tape. We will not substitute our judgment for that of the trial court with respect to the credibility of a witness. *See Walls v. Travelers Indemnity Co.* (1997), 281 Mont. 106, 111, 931 P.2d 712, 715 (citation omitted).

¶29 Pursuant to § 39-71-116(23), MCA (1995),

> Permanent total disability means "a physical condition resulting from injury as defined in this chapter, after a worker reaches maximum medical healing, in which a worker does not have a reasonable prospect of physically performing regular employment. Regular employment means work on a recurring basis performed for remuneration in a trade, business, profession, or other occupation in this state."

¶30 Here, substantial credible evidence of record supports the WCC's finding that Davis is capable of regular employment and, consequently, not permanently totally disabled. Dr. Toder testified in his deposition that Davis was capable of performing sedentary work "at bench level" and specifically agreed Davis could work as a floral delivery driver. In addition, Dr. Berglund agreed that Davis is capable of both full-time and part-time employment. The record further indicates Dr. Peterson, Dr. Schumann and Davis' physical therapist, Smith, all determined that Davis is capable of returning to work in some capacity. Accordingly, we conclude substantial credible evidence of record exists to support the WCC's finding that Davis is capable of regular employment and, therefore, not permanently totally disabled.

¶31 The WCC further found Davis was not entitled to treatment at a pain clinic. Davis contends the WCC erroneously relied on a report from Dr. Peterson in which Davis was

represented as being unmotivated. Davis argues the report was in direct contradiction to the opinions of his treating physicians and was influenced by allegations in a letter to Dr. Peterson from Credit General's counsel.

¶32 Davis bases his assertion of entitlement on § 39-71-704, MCA (1995), quoted at the beginning of his argument. Section 39-71-704(1)(a) and (b), MCA (1995), with regard to primary and secondary medical services to be provided separate and apart from other compensation benefits provided, states as follows:

> (a) After the happening of a compensable injury and subject to other provisions of this chapter, the insurer shall furnish reasonable primary medical services for conditions resulting from the injury for those periods as the nature of the injury or the process of recovery requires.

> (b) The insurer shall furnish secondary medical services only upon a clear demonstration of cost-effectiveness of the services in returning the injured worker to actual employment.

Davis fails to assert which subsection he is arguing under; indeed, he fails to present any legal analysis or advance any legal authority substantiating his entitlement to benefits under this statute on the facts of this case as required by Rule 23(a)(4), M.R.App.P.

¶33 Accordingly, we decline to address this issue further and we hold that Davis has failed to establish error in this regard.

¶34 3. Is Davis entitled to attorney fees and a statutory penalty?

¶35 Davis' request for attorney fees clearly is premised on holdings in his favor on the issues discussed above. We have held that the WCC did not err. Therefore, an award of attorney fees pursuant to § 39-71-611, MCA (1995), is not appropriate in this case.

¶36 Additionally, Davis' argument in favor of a statutory 20% penalty against Credit General is also premised on holdings in his favor on the issues above. Our affirmation of the WCC's judgment is fatal to his request for a penalty under § 39-71-2907, MCA (1995). Accordingly, we conclude Davis is not entitled to attorney fees or a statutory penalty in this matter.

¶37 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ PATRICIA COTTER

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ JIM RICE