No. 87-100

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

FRANCIS J. BUTORI, JR.,

        Claimant and Appellant,

    -vs-

BRUCE METCALF SPORTSMAN 66,

        Employer,

    and

STATE COMPENSATION INSURANCE FUND,

        Defendant and Respondent.

APPEAL FROM:  The Workers' Compensation Court, The Honorable
Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Leonard J. Haxby, Butte, Montana

    For Respondent:

        Hughes, Kellner, Sullivan & Alke; Stuart Kellner,
Helena, Montana

Submitted on Briefs:  May 21, 1987

Decided:  August 11, 1987

Filed:  AUG 11 1987

*Ethel M. Harrison*

Clerk

Mr. Justice William E. Hunt, Sr. delivered the Opinion of the Court.

This is an appeal from the Workers' Compensation Court, State of Montana. Claimant alleges error by the court in holding that defendant State Compensation Insurance Fund (State Fund) is entitled to 50 percent subrogation against his entire third party recovery.

We affirm this order of the Workers' Compensation Court.

The issues presented on appeal are:

1. Whether the Workers' Compensation Court erred in deciding that the State Fund is entitled to assert its subrogation right against the employee's entire third party settlement, including the economic and non-economic damages received.

2. Whether the Workers' Compensation Court calculated the amount of the State Fund's subrogation correctly.

The following facts were stipulated to by the parties and adopted by the Workers' Compensation Court:

1. That the employer, Bruce Metcalf Sportsman 66, is enrolled under Compensation Plan No. 3 of the Workers' Compensation Act, and its insurer is the State Compensation Insurance Fund.

2. That on June 22, 1981, claimant received an injury arising out of and in the course of his employment as a service station helper when his legs were pinned between two customers' automobiles. Claimant's actual weekly wage at the time of the injury was $107.20 per week.

3. That the insurer accepted liability for the claim and has paid claimant the following disability benefits:

a. On July 15, 1981, for the period from and including June 22, 1981 through July 14, 1981, temporary

total disability benefits at the rate of $71.46 per week, totaling $235.37;

b. On December 21, 1982, for the period from and including March 10, 1982 through April 13, 1982, temporary total disability benefits at the rate of $71.46 per week, totaling $357.30.

c. On January 16, 1984, pursuant to Dr. Buehler's whole man impairment rating of 5 percent, claimant was paid $893.25, which represented 25 weeks permanent partial disability benefits at claimant's permanent partial rate of $71.46, reduced by 50 percent to partially satisfy defendant's subrogation interest in claimant's third party settlement.

4. That from the time of the accident through December 6, 1983, defendant paid claimant's medical expenses in the amount of $2,133.21.

5. That on December 27, 1983, claimant settled his third party claim against the driver of the automobile that struck him. In settlement of that claim, Travelers Indemnity Company, the third party's automobile liability insurer paid claimant the sum of $26,000, from an automobile liability insurance policy with bodily injury limits of liability for one person of $500,000.

6. That on January 10, 1984, claimant's attorney reimbursed defendant in the sum of $1,362.94, which represented defendant's 50 percent subrogation interest in both the temporary total disability benefits of $592.67 paid claimant and the medical expenses of $2,133.21 paid for claimant.

7. That since being reimbursed by claimant, defendant has paid medical expenses of $618.36, which is equal to the total medical expense of $1,236.72 incurred by claimant during that period of time, reduced by 50 percent to satisfy

- 3 -

defendant's subrogation interest in claimant's third party settlement.

8. That defendant elected not to participate in the cost of claimant's third party action and waived 50% of its subrogation rights in claimant's third party settlement.

9. In settling his third party claim, claimant incurred attorney fees and costs totaling $6,500.

10. With the exception of the $1,362.94 payable to the State Fund, the $26,000 was paid entirely for pain and suffering, non-economic loss.

The subrogation rights of Workers' Compensation insurance carriers upon third party recovery has a straightforward history in Montana case law.

The statutorily given right of subrogation has been recognized as constitutional and as being in furtherance of equity and justice.

> When as here, a worker, in the course of his employment is injured by the act or omission of one other than his employer or co-employee, his injury, because it was incurred in the course of his employment, gives rise to an obligation on the part of his employer or his employer's insurer, to provide the workers with benefits under the Workers' Compensation Act. The employer or insured in that case is called upon to make payments to the worker which really should be the burden and the responsibility of the third-party tortfeasor. It is a doctrine as old as equity that when a party is burdened by a debt or obligation that in natural justice, equity and good conscience should be paid by another, that party is subrogated to the rights of his payee to the extent of the payments made, as against the responsible party.

Brandner v. Travelers Ins. Co. (1978), 179 Mont. 208, 587 P.2d 933, 936-937; See also Skauge v. Mountain States Tel. & Tel. Co. (1977), 172 Mont. 521, 565 P.2d 628.

When claimant elects to pursue a third party action, §§ 39-71-412 and 39-71-414, MCA, govern.

If the insurer elects to participate in the cost of the third party action the insurer is entitled to full subrogation for the amount which has been or will be paid to claimant. Section 39-71-414(1), MCA. Tuttle v. Morrison-Knudson Co., Inc. (1978), 177 Mont. 166, 580 P.2d 1379.

If the insurer elects not to participate, the insurer is entitled to 50 percent of the amount paid or owed to claimant for up to two-thirds the amount of claimant's recovery. Section 39-71-414(2)(c), MCA.

Occasions in which this right of subrogation has been limited by this Court are few. In Fisher v. Missoula White Pine Sash Co. (1974), 164 Mont. 41, 518 P.2d 795, this Court held that the statutory language did not differentiate between a survival action and a wrongful death action. In Swanson v. Champion International (1982), 197 Mont. 509, 646 P.2d 1166, the Fisher ruling was distinguished as no longer applicable after the 1977 amendment to the Workers' Compensation subrogation statute was enacted.

> [U]nder the present statutory scheme,. . . and because of the intrinsic differences that exist now and have always existed in the source and effect of recoveries made in survival actions as distinguished from wrongful death actions, the subrogation rights of the employer or its insurer under the Workers' Compensation Act do not extend to recoveries made under wrongful death claims.

646 P.2d at 1173.

The other distinguishable situation in which subrogation by the Workers' Compensation insurance carrier is limited is "in a case of reasonably clear liability, where a claimant is forced to settle for the limits of an insurance policy which, together with claimant's Workers' Compensation award, do not grant full legal redress to claimant . . ." Hall v. State

- 5 -

Compensation Fund (Mont. 1985), 708 P.2d 234, 237, 42 St.Rep. 1502, 1505. See also Skauge, 565 P.2d at 632.

The case before this Court embraces none of the distinguishable facts which would negate or infringe upon the subrogation rights of the State Fund. Butori was not killed as a result of the industrial accident at issue. Consequently, there is no question concerning wrongful death versus survival actions. Nor is there an issue of Butori not having been "made whole." Butori settled his third party action for $26,000 on a policy with a $500,000 liability limit. The $1,362.94 portion of the settlement was designated as the subrogated amount payable to the State Fund for prior benefits paid. The remainder of the $26,000 was designated as non-economic loss damages, compensating Butori for pain and suffering. These designated amounts were agreed upon by the settling parties. However, "[w]hen subrogation is considered, neither the court nor the Workers' Compensation Court or Division should be bound by the allocations so made between private counsel." Swanson, 646 P.2d at 1175.

Further, as discussed above, the only occasions in which this Court has allowed an infringement on the rights of subrogation for a Workers' Compensation insurance carrier are when there is a wrongful death recovery or when claimant has not been made whole. More specifically, the only time this Court has differentiated between economic and non-economic losses is when the death was instantaneous, thereby barring a survival action. In such a situation, the Workers' Compensation Court can determine the value of the economic damages contained in the settlement or judgment and award such amount as subrogation to the insurance carrier.

By "economic damages" we refer to those elements of damages in a wrongful death case that would have

their source in the earnings of the decedent, and recompensed medical and burial expenses paid partly or wholly by the subrogating carrier.

Swanson, 646 P.2d at 1174.

Appellant has not demonstrated that he falls under any of these extenuating circumstances. Therefore, we affirm the order of the Workers' Compensation Court in holding that the State Fund is entitled to 50 percent subrogation of appellant's entire third party settlement.

The second issue of whether the Workers' Compensation Court correctly calculated the amount of subrogation is resolved by a review of the applicable formula and its application by the Workers' Compensation Court.

The record shows that the Workers' Compensation Court correctly utilized the statutorily designed formula as outlined in Brandner, 587 P.2d at 938, 939:

| | | |
|---|---|---|
| (1) | Amount of recovery | $26,000 |
| (2) | Attorney fees and costs | 6,500 |
| (3) | Net recovery after fees and costs | 19,500 |
| (4) | Claimant's minimum entitlement 1/3 x $19,500 | 6,500 |
| (5) | Insurers maximum recovery 50% (½ x $26,000) | 13,000 |
| (6) | Sum of (4) and (5) | 19,[5]00 |

The net recovery of $19,500 is sufficient to provide claimant with his minimum statutory entitlement of $6,500.

| | | | |
|---|---|---|---|
| (7) | Insurer maximum entitlement | | 13,000 |
| (8) | Recapitulation | | |
| | Amount of Recovery | $26,000 | $ 6,500 |
| | Cost and fees | | 6,500 |
| | Claimant's entitlement | | 13,000 |
| | | $26,000 | $26,000 |
| (9) | Benefits paid to date Temporary Total Disability | | $ 4,512.38 |

$  235.37  (agreed fact 3a)
   357.30  (agreed fact 3b)

| Total | $ 592.67 | |
| --- | --- | --- |
| Medical | $2,133.21 | (agreed fact 4) |
| (impairment 5%) | 1,786.50 | (agreed fact 3c) |
| Total | $3,919.71 | |

(10) Insurer share of payments
to date (50% of $4,512.38)                              $ 2,256.19

This calculation, taken directly from the judgment of the Workers' Compensation Court, provides that Butori receive at least one-third of the net recovery, less claimant's proportionate share of fees and costs. This amount is required by § 39-71-414(2)(d), MCA, when the insured party initiates a third party action without insurer participation. The Workers' Compensation judge held further that:

> Claimant is entitled to any credit for amounts previously reimbursed to insurer for its subrogation claim. In addition, the insurer may reduce future benefits by 50 percent until $13,000 is paid, at which time full benefits are restored.

Butori cannot claim that he is being inadequately recompensed. He is being paid monthly benefits from the State Fund which cover his medical expenses and disability benefits. In addition, he will receive <u>at least</u> $6,500 as damages recovered from his third party action.

The court's calculations ensure that Butori will receive a minimum amount, but does not limit his recovery to only one-third of the entire amount received. The State Fund is entitled to 50 percent subrogation of amounts paid to claimant up to $13,000. If State Fund's obligations to Butori never total $26,000, he will receive the remainder of the recovery amount. The court correctly calculated the subrogated amount of appellant's third party recovery.

We affirm the judgment of the Workers' Compensation Court.

_____
William E. Hunt
Justice

We Concur:

_____
John Conway Harrison.

_____
John C. Sheehy

_____
L. C. Gulbrandson

_____
R. C. McDonough
Justices

- 9 -

|           |            |                   |
|-----------|------------|-------------------|
| Total     | $ 592.67   |                   |
| Medical   | $2,133.21  | (agreed fact 4)   |
| (impairment 5%) | 1,786.50 | (agreed fact 3c) |
| Total     | $3,919.71  |                   |

(10) Insurer share of payments
to date (50% of $4,512.38)                    $ 2,256.19

This calculation, taken directly from the judgment of the Workers' Compensation Court, provides that Butori receive at least one-third of the net recovery, less claimant's proportionate share of fees and costs. This amount is required by § 39-71-414(2)(d), MCA, when the insured party initiates a third party action without insurer participation. The Workers' Compensation judge held further that:

> Claimant is entitled to any credit for amounts previously reimbursed to insurer for its subrogation claim. In addition, the insurer may reduce future benefits by 50 percent until $13,000 is paid, at which time full benefits are restored.

Butori cannot claim that he is being inadequately recompensed. He is being paid monthly benefits from the State Fund which cover his medical expenses and disability benefits. In addition, he will receive _at least_ $6,500 as damages recovered from his third party action.

The court's calculations ensure that Butori will receive a minimum amount, but does not limit his recovery to only one-third of the entire amount received. The State Fund is entitled to 50 percent subrogation of amounts paid to claimant up to $13,000. If State Fund's obligations to Butori never total $26,000, he will receive the remainder of the recovery amount. The court correctly calculated the subrogated amount of appellant's third party recovery.

We affirm the judgment of the Workers' Compensation Court.