No. 96-710

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

CLINTON LOSS,

Petitioner and Appellant,

v.

LUMBERMENS MUTUAL CASUALTY COMPANY,

Respondent,

NABISCO BRANDS, INC.,

Employer.

APPEAL FROM:   Workers' Compensation Court, State of Montana,
The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Norman H. Grosfield; Utick & Grosfield,
Helena, Montana

For Respondent:

Thomas A. Marra; Marra, Wenz, Johnson &
Hopkins, Great Falls, Montana

Submitted on Briefs: February 27, 1997

Decided: March 24, 1997
Filed:


_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.


Clinton Loss appeals from the Workers' Compensation Court's grant of summary judgment to insurer Lumbermens Mutual Casualty Company on the question of whether rehabilitation benefits are available under the Occupational Disease Act (ODA). We affirm the decision of the Workers' Compensation Court.

Clinton Loss suffers from carpal tunnel syndrome. In November of 1991 he became disabled as a result of his carpal tunnel condition and filed an occupational disease claim. The claim was accepted and Lumbermens paid both wage loss and medical benefits. In 1994, Loss also sought an award of $10,000 pursuant to 39-72-405(2), MCA (1991), and the Workers' Compensation Court awarded the $10,000 in a lump sum. Loss also sought reinstatement of total disability benefits which the court denied. Neither party appealed the court's ruling. Subsequently, Loss requested total rehabilitation benefits pursuant to 39-71-2001, MCA (1991). Lumbermens denied the request and Loss submitted a petition to the Workers' Compensation Court seeking total rehabilitation benefits. The court granted Lumbermens' motion for summary judgment.

The standard of review for an appeal from the Workers' Compensation Court's grant or denial of a motion for summary judgment is the same as that used by a district court. We determine whether there is an absence of genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. Our review of the court's conclusions of law is plenary; we simply determine whether its legal conclusions are correct.

Clarke v. Massey (1995), 271 Mont. 412, 415, 897 P.2d 1085, 1087. It is undisputed that Loss suffers from an occupational disease. Since that is the only fact relevant to the legal question posed, the matter was ripe for summary judgment.

Loss contends that the statutory provision allowing for rehabilitation benefits to injured workers, 39-71-2001, MCA (1991), was enacted as a "stand alone" section which, although

coincidentally codified in Title 39, Chapter 71 (Workers' Compensation Act), applies as well to occupational disease claims under Title 39, Chapter 72.

The statutory provision for rehabilitation benefits, 39-71-2001, MCA (1991), was enacted by the 1991 legislature, which directed that it be "codified as an integral part of Title 39, chapter 71, part 20, and the provisions of Title 39, chapter 71, apply to [the new section]." 1991 Mont. Laws, ch. 574, 12. The Workers' Compensation Court concluded that it was clear that the legislature intended the new section to be an "integral part of the Workers' Compensation Act (WCA) and applicable to workers' compensation claims." We agree.

Loss contends that the provision for rehabilitation benefits should be read into the ODA since the legislature did not expressly preclude rehabilitation benefits in occupational disease cases. It is not our prerogative, however, to infer such breadth of intent from legislation which does not reference the ODA nor is codified within the ODA.

The role of the Court in interpreting statutory language is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.

EBI/Orion Group v. Blythe (Mont. 1997), 931 P.2d 38, 41, 54 St.Rep. 54, 56; see also Murer v. State Comp. Mut. Ins. Fund (1994), 267 Mont. 516, 520, 885 P.2d 428, 430.

Loss relies on our decision in Ingbretson v. Louisiana Pacific Corp. (1995), 272 Mont. 294, 900 P.2d 912, for the proposition that the provisions of the WCA apply to occupational disease claims. Loss' reading of Ingbretson is too broad. As Loss points out, we held that the penalty and attorney fee provisions of the WCA applied to Ingbretson's occupational disease claim. However, it is imperative to put that holding in its proper context.

The Occupational Disease Act provides that "practice and procedure prescribed in the Workers' Compensation Act applies to all proceedings under this chapter." Section 39-72-402(1), MCA. The penalty statute, 39-71-2907, MCA, was not a part of the original Workers' Compensation Act, and therefore its application is not limited to cases under the Workers' Compensation Act. In this instance, we agree with the Workers' Compensation Court that the "practice and procedure" of penalty imposition applies through 39-72-402(1), MCA.

We affirm the decision of the Workers' Compensation Court in its entirety. [Emphasis added.]

Ingbretson, 900 P.2d at 917.

Clearly in Ingbretson, we relied on the fact that the ODA

incorporates by reference the "practice and procedure" provisions of the WCA. Section 39-72-402(1), MCA. We held that the penalty provisions of the WCA are part of the "practice and procedure" of the WCA and, therefore, are incorporated into the ODA. The same reasoning does not apply to the case at hand. Here, we are dealing not with "practice and procedure" but rather with rehabilitation benefits. The two acts have separate provisions as to benefits. For instance, unlike the WCA, the ODA contains no permanent partial disability benefits provision. The WCA does not provide, as does the ODA, 39-72-405, MCA, for an award of up to $10,000 for a non-disabling occupational disease.

It is apparent from a review of the ODA that the legislature did not intend that rehabilitation benefits be incorporated into that Act. First of all, the legislature has been very explicit in spelling out those instances in which it intends that the ODA incorporates provisions from the WCA. By way of example, each of the following sections of the ODA specifically reference the WCA: The definitions set forth in 39-72-102(5) through (11), (14) and (15), MCA; 39-72-305(2), MCA, pertaining to uninsured employers and benefits due uninsured claimants; 39-72-310(2), MCA, pertaining to the three compensation plans under the WCA; 39-72-402, MCA, pertaining to incorporation of the "practice and procedure" of the WCA; 39-72-405(2), MCA, pertaining to mediation procedures; 39-72-704, MCA, pertaining to medical and hospital expenses; and 39-72-705, MCA, pertaining to burial expenses. Furthermore, the ODA specifically defines the benefits which are payable under the ODA: Section 39-72-509, MCA, (benefits for pneumoconiosis); 39-72-405, MCA, (limitations on payment of compensation); 39-72-701, MCA, (compensation for total disability or death due to occupational disease other than pneumoconiosis); 39-72-704, MCA, (medical and hospital expenses); 39-72-705, MCA, (burial expenses); 39-72-706, MCA, (aggravation); 39-72-707 (Silicosis); 39-72-709, MCA, (diminution of compensation); and 39-72-711, MCA, (lump-sum and compromise settlements). Rehabilitation benefits are not among the benefits enumerated in this rather extensive list of ODA benefits.

It is clear from a reading of the two acts in question that the legislature did not intend that rehabilitation benefits provided for in the WCA be incorporated into the ODA. Accordingly, we hold that rehabilitation benefits under 39-71-2001, MCA (1991), are not available to claimants proceeding under the Occupational Disease Act.

AFFIRMED.

/S/ W. WILLIAM LEAPHART


We concur:
/S/ J. A. TURNAGE
/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

Justice William E. Hunt, Sr., specially concurs.

The majority has properly applied the law, and on that basis I agree with the majority opinion. I write separately, however, to express my concern with the law that occupational disease is segregated from our scheme of workers' compensation which has been applicable in Montana since the Anaconda Company was at its zenith.

The law in Montana that distinguishes occupational disease from compensable injuries under the Workers' Compensation Act is a hangover from the days when the Anaconda Company strongly influenced legislation. Simply, the distinction was made so that the Anaconda Company would not have to compensate miners suffering from silicosis and other lung diseases according to the workers' compensation scheme.

It is silly to segregate occupational disease from the workers' compensation system to the point where a person suffering from an occupational disease is not entitled to rehabilitation benefits. The basis for such segregation has disappeared, and so should the segregation. Montana should join the many other states that include occupational disease within the definition of an injury covered by workers' compensation.

/S/ WILLIAM E. HUNT, SR.