No. 99-552

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 259

301 Mont. 508

11 P.3d 105

ROYAL INSURANCE COMPANY,

Petitioner and Respondent,

v.

EARL W. ROADARMEL

and DONALD E. WHITE,

Respondents and Appellants.

APPEAL FROM: Workers' Compensation Court

State of Montana

The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Karl P. Seel, Bozeman, Montana (White); Earl W. Roadarmel, Townsend, Montana (pro se)

For Respondent:

James G. Edmiston, Edmiston &Schernerhorn, Billings, Montana

Submitted on Briefs: March 16, 2000
Decided: September 28, 2000

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1 The Royal Insurance Company ("Royal") initiated this subrogation action against Earl W. Roadarmel ("Roadarmel"), who had been injured in a workers' compensation accident in 1986, and the attorney who prosecuted his claim, Donald E. White ("White"). The Workers' Compensation Court, State of Montana ("the WCC"), granted summary judgment to Royal under the subrogation statute of the Workers' Compensation Act, § 39-71-414, MCA (1985), finding Roadarmel and White (collectively "Appellants") personally liable for Royal's share of third-party proceeds received as a result of litigation against two third parties, the Exxon Corporation and the Great Western Chemical Company. Roadarmel and White appeal the WCC's grant of summary judgment to Royal. We reverse and remand.

¶2 Appellants contend that the WCC erred in granting summary judgment to Royal. They raise two issues in that regard:

¶3 I. Whether the WCC erred in concluding that Royal's subrogation action against Roadarmel is not barred by the two-year statute of limitations of § 27-2-211(1)(c), MCA, governing actions based upon a liability created by statute.

¶4 II. Whether the WCC erred in concluding that the action by Royal against the attorney White is not barred by the three-year statute of limitations of § 72-34-511(1)(a), MCA, governing actions based upon an alleged breach of trust.

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 Roadarmel suffered an industrial injury stemming from chemical exposure in

September of 1986 while working as a heavy equipment operator on a highway project in Butte, Montana. Roadarmel filed a workers' compensation claim against his employer, Acme Concrete, which was defended by its insurance carrier, Royal. White represented Roadarmel and the case was tried before the WCC, resulting in a judgment for Roadarmel. The judgment was upheld by this Court in Roadarmel v. Acme Concrete Co. (1989), 237 Mont. 163, 772 P.2d 1259.

¶6 Roadarmel, represented by White, also filed a third-party action against the Exxon Corporation and the Great Western Chemical Company, alleging strict liability in tort for failure to warn of possible effects of the chemical agent which caused Roadarmel's injuries. Roadarmel, through White, provided notice to Royal, as required by the subrogation standard of § 39-71-414, MCA (1985), that a third-party action was being commenced. Pursuant to the subrogation statute, Roadarmel requested that Royal pay a portion of the costs of the third-party action. Royal agreed to participate in the costs rather than waive 50% of its subrogation rights under § 39-71-414, MCA (1985), and tendered a check for $5,000 towards the costs of the third-party action.

¶7 On March 10, 1992, at the conclusion of the jury trial in federal district court, White sent notice to Royal advising it of Roadarmel's successful third-party action and of the fact that the third parties had filed an appeal with the Ninth Circuit Court of Appeals. The Ninth Circuit subsequently upheld the verdict. On February 18, 1994, White sent another letter to Royal advising it of the resolution of the third-party appeal. This letter attached copies of the check received from Great Western Chemical and the jury verdict forms; provided a break-down of the actual costs of the third-party action; and requested that Royal determine its subrogation interest in a portion of the third-party proceeds.

¶8 Royal then independently computed the amount it contended it was owed, and by letters dated April 7 and October 3 of 1994, advised Roadarmel that it was going to file an action to determine its subrogation interest in the proceeds from the third-party action. White, acting on behalf of Roadarmel, did not respond to either of Royal's aforementioned letters. However, after receiving Roadarmel's February 18, 1994 notice of the successful third-party action, a period of 3½ years passed before Royal filed, on October 29, 1997, a petition for hearing to determine its subrogation rights in the third-party proceeds.

¶9 Through discovery in the subrogation action, Royal learned that White had disbursed the third-party proceeds to Roadarmel on February 18, 1994, the same date that White had requested a computation of Royal's subrogation interest. White, upon disbursing the

money, allegedly instructed Roadarmel to hold the funds pending a subrogation determination. Royal amended its petition, on November 17, 1997, to include a separate count against White for an alleged breach of the duty of trust owed Royal as a third-party beneficiary of the trust imposed on the third-party proceeds.

¶10 The WCC decided this case on cross-motions for summary judgment. The court determined that a "subrogation agreement" had been formed in the exchange of letters between White and Royal's attorney, James G. Edmiston (Edmiston), and that the statute of limitations on the contract had not expired. Therefore, the WCC issued judgment in the amount of $63,864.79 jointly and severally against Roadarmel and White for breaching the subrogation contract and failing to honor Royal's "first lien" on the judgment.

## DISCUSSION

¶11 This Court's standard of review of a grant or denial of summary judgment by the WCC is the same as that used by the court in ruling upon the motion for summary judgment. Heath v. Montana Mun. Ins. Authority, 1998 MT 111, ¶ 9, 288 Mont. 463, ¶ 9, 959 P.2d 480, ¶ 9 (citing Heisler v. Hines Motor Co. (1997), 282 Mont. 270, 274, 937 P.2d 45, 47). That is, we review whether there is an absence of genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *Heath*, ¶ 9.

¶12 Our review of the WCC's conclusions of law is plenary; we simply determine whether the court's legal conclusions are correct. *Heath*, ¶ 9 (citing Loss v. Lumbermens Mut. Cas. Co. (1997), 282 Mont. 80, 81, 936 P.2d 313, 314). Here, since the material facts are undisputed, only questions of law remain. Thus, we must determine whether the WCC correctly concluded, as a matter of law, that Royal's claims against Roadarmel and White are not barred by the relevant statutes of limitations. We hold that Royal's claims are time-barred and, therefore, we direct entry of summary judgment in favor of Roadarmel and White.

## I.

¶13 **Did the WCC err in concluding that Royal's subrogation action against Roadarmel is not barred by the two-year statute of limitations of § 27-2-211(1)(c), MCA, governing actions based upon a liability created by statute?**

¶14 Roadarmel and White contend that Royal's action to collect a portion of the third-

party proceeds under the subrogation statute of the Workers' Compensation Act, § 39-71-414(1), MCA (1985), is time-barred by the two-year statute of limitations which governs actions based upon "a liability created by statute," § 27-2-211(1)(c), MCA. The basis for the position of Appellants is that the subrogation right of Royal constitutes a "statutory liability" which is entirely dependent upon § 39-71-414, MCA (1985). There is no common law right involved here, asserts Appellants, and without the statute there would be no liability as to the third party proceeds received by Roadarmel. Therefore, they argue that the two-year statute of limitations of § 27-2-211(1)(c), MCA, governs Royal's claim for reimbursement against Roadarmel. We agree with the position of Appellants.

¶15 Section 27-2-211, MCA, provides in pertinent part that "[w]ithin 2 years is the period prescribed for the commencement of an action upon . . . a liability created by statute other than . . . a penalty or forfeiture; or . . . a statutory debt created by the payment of public assistance." Section 27-2-211(1)(c)(i)-(ii), MCA. It is not contended here that Royal's entitlement to a portion of the third-party proceeds pursuant to § 39-71-414(1), MCA (1985), is in the nature of a "penalty or forfeiture" or a "statutory debt created by the payment of public assistance." Thus, the question becomes whether Roadarmel's obligation to Royal amounts to a "liability created by statute" within the meaning of § 27-2-211(1)(c), MCA.

¶16 To begin with, there is no doubt that the insurer's "right of subrogation" provided for in § 39-71-414, MCA (1985), creates a statutory liability as to any recovery by the injured employee against a third party:

> If a [third-party] action is prosecuted [by the injured employee] as provided for in 39-71-412 [liability of third party other than employer or fellow employee] or 39-71-413 [liability of fellow employee for intentional and malicious acts or omissions] and except as otherwise provided in this section, the insurer is entitled to subrogation for all compensation and benefits paid or to be paid under the Workers' Compensation Act. The insurer's right of subrogation is a first lien on the claim, judgment, or recovery. [Emphasis added.]

Section 39-71-414(1), MCA (1985).

¶17 However, that does not end our inquiry. As Appellants correctly contend, the phrase "liability created by statute" has a settled meaning in the law of Montana as well as other states. This Court has construed the phrase to mean " 'a liability which would not exist but

for the statute . . . .' " Abell v. Bishop (1930), 86 Mont. 478, 486, 284 P. 525, 528 (quoting 37 C.J. *Limitations of Actions* § 123). Put differently, the test is whether liability would exist absent the statute in question. State *ex rel.* Fallon County v. District Court (1972), 161 Mont. 79, 81, 505 P.2d 120, 121. Therefore, a liability created by statute is one which "establishes a new rule of private right unknown to the common law." Butler v. Peters (1922), 62 Mont. 381, 384, 205 P. 247, 248. *See also* 51 Am.Jur.2d *Limitations of Actions* § 82 (1962) ("Clearly, an action is not based upon a liability created by statute if the right is one which would exist at common law in the absence of statute."). Other states have similarly defined the phrase "liability created by statute." *See, e.g.*, Lincoln Bank and Trust v. Neustadt (Okla. Ct. App. 1996), 917 P.2d 1005, 1008; Wright v. Kansas Water Office (Kan. 1994), 881 P.2d 567, 572; Preferred Risk Mut. Ins. Co. v. Vargas (Ariz. Ct. App. 1988), 754 P.2d 346, 348.

¶18 Notably, the phrase "liability created by statute" does not encompass an action in which the element of agreement enters. *Abell*, 86 Mont. at 986, 284 P. at 528. Indeed, "[i]t is an obligation which the law creates in the absence of an agreement." Oregon-Washington R. & Nav. Co. v. Seattle Grain Co. (Wash. 1919), 178 P. 648, 650. At this juncture, it becomes necessary to address Royal's contention, as accepted by the WCC, that the correspondence regarding the third-party action between the respective attorneys, White and Edmiston, created a "subrogation agreement" to which the statutes of limitations for contract actions apply. As the WCC reasoned:

> [T]he subrogation agreement between Royal and White (acting as [Roadarmel's] agent) is an enforceable contract.

> Thus, the applicable statute of limitations is the five or eight year period specified by section 27-2-202 for actions on contracts. Since the present petition was brought within five years after [Roadarmel's] judgment against Great Western was paid, it is timely and Royal is entitled to enforce its subrogation interest. Since the amount is not in dispute, [Roadarmel] is liable to Royal in the sum of $63,864.79.

¶19 Royal, while conceding that a workers' compensation insurer's subrogation right arises pursuant to § 39-71-414, MCA (1985), argues that a contract was indeed formed regarding its subrogation interest in the third-party proceeds recovered by Roadarmel. Thus, Royal asserts that since more than one statute of limitations applies in this case, this Court should favor application of the longer limitations period as a matter of public policy. Royal relies primarily on our discussion in Thiel v. Taurus Drilling Ltd. 1980-II (1985), 218 Mont.

201, 710 P.2d 33, where we said:

> Where there is a substantial question as to which of two or more statutes of limitations should apply, the general rule is that the doubt should be resolved in favor of the statute containing the longest limitations. . . .
>
> "This [general rule] serves the legislative intent of protecting defendants from stale claims, yet provides an approach of liberality which affords a plaintiff party-litigant maximum free access to our court system. . . ."

*Thiel, 218 Mont. at 212-13, 710 P.2d at 40 (citations omitted).*

¶20 Royal thus urges this Court to apply that general rule here, as we did in Ritland v. Rowe (1993), 260 Mont. 453, 861 P.2d 175, and Kearney v. KXLF Communications, Inc. (1994), 263 Mont. 407, 869 P.2d 772, so as to further the public policy recognized in *Thiel* of favoring "access to our courts and resolution of claims on their merits rather than the arbitrary bar of the statute of limitations." *Kearney*, 263 Mont. at 413, 869 P.2d at 775.

¶21 The problem with Royal's position is that, in contrast to *Thiel*, *Ritland*, and *Kearney*, this is not a case where there is a substantial question as to which of two statutes of limitations should apply. As Appellants argue, no contract was formed concerning Royal's subrogation interest in the third-party proceeds because all of the correspondence allegedly giving rise to the "subrogation agreement" took place in the context of the mandatory and self-executing right of subrogation provided for in § 39-71-414, MCA (1985), and, therefore, lacked the essential element of free and mutual consent.

¶22 In Montana, the essential elements of a contract are: (1) identifiable parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration. Section 28-2-102, MCA. And, as we have said of the element of consent, "it must be free, mutual, and communicated by each party to the other." Interstate Production Credit Ass'n v. Abbott (1986), 223 Mont. 405, 408, 726 P.2d 824, 826. Appellants argue, and we agree, that to find, as did the WCC, that a contract was formed between the parties here, there must be as a beginning premise the freedom of both parties to negotiate and mutually consent to a "subrogation agreement."

¶23 However, the workers' compensation subrogation statute, § 39-71-414, MCA (1985), creates what Appellants properly characterize as a "tight liability scheme" in which the

injured employee has no right or ability to bargain or contract away the rights of the insurer to be subrogated to third-party proceeds recovered by the employee. The statute provides for the following mandatory procedure with respect to third-party actions instituted by the injured employee:

> (2) (a) If the injured employee intends to institute the third party action, he [or she] shall give the insurer reasonable notice of his [or her] intention to institute the action.
>
> (b) The injured employee may request that the insurer pay a proportionate share of the reasonable cost of the action, including attorneys' fees.
>
> (c) The insurer may elect not to participate in the cost of the action. If this election is made, the insurer waives 50% of its subrogation rights granted by this section.

Section 39-71-414(2), MCA (1985).

¶24 As we have said of the statute:

> [Section] 39-71-414, MCA, provides for the insurer's role in the [third-party] action. It provides that the insurer is entitled to subrogation for compensation and benefits paid. If the claimant brings an action against the third party, claimant is to inform the insurer, who <u>may</u> decide to participate in the action. It also states that the insurer may bring an action itself if the claimant does not bring an action within a year of the date of the injury and that the insurer may enter its own settlement for subrogation. The statute provides for no more than these rights.

Wildin v. CNA Ins. Co. (1993), 256 Mont. 354, 357, 846 P.2d 1022, 1024 (emphasis in original).

¶25 Where, as here, the injured employee chooses to initiate a third-party action, the employee must provide notice to the insurer of the action and may also request that the insurer share in the costs of the action. Section 39-71-414(2)(a)-(b), MCA (1985). That is precisely what happened here when White, on behalf of Roadarmel, provided the mandatory notice to Royal of the third-party action against Exxon and Great Western Chemical, and further requested that Royal agree to a "$5,000 cost advancement" for the action. Royal agreed to advance the $5,000, provided that "[n]o other cost advancements w [ould] be required" to "fully" protect its subrogation interest in the third-party action.

¶26 While we agree with the WCC that Roadarmel "was not entitled to $5,000 up front money" under the statutory subrogation scheme, we disagree with the WCC that he therefore "bargained for" the $5,000 which constituted "consideration for the agreement." The insurer retains the absolute right by statute to choose to participate in the reasonable costs of the third-party action, as did Royal, or to waive 50% of its subrogation rights under § 39-71-414, MCA (1985). The injured employee has essentially no bargaining power, as Appellants argue, save the right to request that the insurer share in the reasonable costs and attorney's fees of the third-party action; but even then, the insurer alone determines whether or not to participate in the costs of said action.

¶27 That Royal agreed to advance the $5,000 does not answer the question of whether a valid contract was formed between the parties; for Royal retained the statutory right to decline Roadarmel's specific request for $5,000 up front as failing to constitute a "proportionate share of the reasonable cost of the action . . . ." Section 39-71-414(2)(b), MCA (1985). We note that the costs of Roadarmel's protracted third-party action, including attorney's fees, amounted to nearly $30,000. In any event, an injured employee like Roadarmel who institutes a third-party action and properly follows the procedure specified by § 39-71-414, MCA (1985), cannot be said to have freely negotiated for contractual liability in following the statutory requirements. *Cf. Butler*, 62 Mont. 386, 205 P. at 249 (citation omitted) ("A liability imposed by statute and not assumed by the voluntary agreement of the parties is not a contract, even if it is a liability on which the action of debt could have been maintained at common law.").

¶28 The correspondence in this case only confirmed in writing that which was required by the statute, from the initial notice that the third-party action was being filed up to the final accounting of the successful appeal before the Ninth Circuit. Thus, we hold that the WCC erred in concluding that the correspondence between the parties, which took place entirely in the context of the mandatory statutory procedure provided for in § 39-71-414, MCA (1985), gave rise to an enforceable contract. In the absence of a valid contract regarding Royal's statutory subrogation rights, this is not a case where more than one limitations period applies and " 'the policy of repose is outweighed [in] the interests of justice . . . .' " *Ritland*, 260 Mont. at 458, 861 P.2d at 178 (quoting *Thiel*, 218 Mont. at 212-13, 710 P.2d at 40).

¶29 Our question now is whether an insurer's "first lien" under § 39-71-414(1), MCA (1985), against any proceeds recovered in a third-party action by an injured employee constitutes a "liability created by statute" governed by the two-year statute of limitations

of § 27-2-211(1)(c), MCA. We conclude that it does. We begin with the observation that the Workers' Compensation Act is a legislatively-created substitute for common law rights and remedies regarding workplace injuries. *See* Raisler v. Burlington Northern R. Co. (1985), 219 Mont. 254, 260, 717 P.2d 535, 538; *see also* Shea v. North-Butte Mining Co. (1919), 55 Mont. 522, 528, 179 P. 499, 501 (discussing how the Montana Legislature intended to create a "substitute for the imperfect and economically wasteful common-law system by private action" in enacting our Workers' Compensation Act in 1915).

¶30 Thus, we determined in Fisher v. Missoula White Pine Sash Company (1974), 164 Mont. 41, 518 P.2d 795, that "any subrogation right the employer or its insurer possess is purely statutory" and, therefore, is "governed by the provisions of the Montana Workmen's Compensation Act." *Fisher*, 164 Mont. at 44-45, 518 P.2d at 797. Since *Fisher*, this Court has properly characterized an insurer's right of subrogation under the Act as "statutorily given." Butori v. Bruce Metcalf Sportsman (1987), 228 Mont. 52, 54, 740 P.2d 1126, 1128.

¶31 At the same time, however, we have discussed the insurer's right of subrogation under the Workers' Compensation Act as having its roots, at least theoretically, in antediluvian notions of equity:

> When . . . a worker, in the course of his [or her] employment is injured by the act or omission of [a third party], . . . [it] gives rise to an obligation on the part of [the employer or insurer] to provide the worker with benefits under the Workers' Compensation Act. The employer or insurer in that case is called upon to make payments to the worker which really should be the burden and responsibility of the third-party tortfeasor. <u>It is a doctrine as old as equity that when a party is burdened by a debt or obligation that in natural justice, equity and good conscience should be paid by another, that party is subrogated to the rights of his payee to the extent of the payments made, as against the responsible party.</u> [Emphasis added.]

Brandner v. Travelers Ins. Co. (1978), 179 Mont. 208, 213, 587 P.2d 933, 936-37, *overruled on other grounds by* Francetich v. State Comp. Mut. Ins. Fund (1992), 252 Mont. 215, 827 P.2d 1279; Ness v. Anaconda Minerals Co. (1996), 279 Mont. 472, 929 P.2d 205.

¶32 We acknowledge that, although the Workers' Compensation Act supplanted common law remedies regarding workplace injuries, rights of equitable subrogation would exist at common law in the absence of the statutory scheme. *See generally* Skauge v. Mountain

States Tel. & Tel. Co. (1977), 172 Mont. 521, 565 P.2d 628 (discussing common law equitable rights of subrogation). In Hardware Mut. Casualty Co. v. Butler (1944), 116 Mont. 73, 148 P.2d 563, this Court even went so far as to state that:

> Independent of any provision of the Workmen's Compensation Act, the employer or the insurance carrier paying compensation would have the right to be subrogated to the claim of the injured work[er] as against a third party whose negligence was responsible for the injuries sustained by the work[er].

*Butler, 116 Mont. at 86, 148 P.2d at 568, clarified as dictum by Fisher, 164 Mont. at 45, 518 P.2d at 797 (expressly disavowing the foregoing statement in Butler as "dictum" which "should be disregarded").*

¶33 While we recognize that rights of equitable subrogation exist at common law, we nevertheless determine that the insurer's "first lien" against any third-party proceeds recovered by the injured employee must be conceptually distinguished from the common law right of equitable subrogation. When drawing such a distinction, the insurer's lien created by § 39-71-414(1), MCA (1985), as against third-party proceeds recovered by the employee, constitutes a "liability created by statute" within the meaning of § 27-2-211(1)(c), MCA, because it amounts to an unqualified right of <u>reimbursement</u> not found at common law.

¶34 The right of "subrogation" granted by § 39-71-414, MCA (1985), must necessarily be read in reference to the Act as a whole:

> We must look at the subrogation rights provided by the Montana Act from the viewpoint that the employer has accepted liability without fault to the employee; that the employee's recovery against the employer is limited to the benefits under the Act; that the employer has given up its common law defenses if it does not come under the Act; and that the special provisions of the Act with respect to subrogation are designed to provide an incentive to the employee to seek reimbursement for his damages from a responsible party so that <u>the employer may be reimbursed in whole or in part out of any recovery made by the employee</u>. [Emphasis added.]

Cordier v. Stetson-Ross, Inc. (1979), 184 Mont. 502, 515, 604 P.2d 86, 93.

¶35 It has been said that workers' compensation acts create statutory causes of action that

are "quite different from that of the common law." Rideaux v. Torgrimson (Cal. 1939), 86 P.2d 826, 827 (discussing provisions of the Workmen's Compensation Act of California). Thus, where a statutory workers' compensation scheme provides for a cause of action but fails to specify a particular statute of limitations, it generally has been held that "the limitation period applicable to liabilities created by statute applies to [the] action or proceeding . . . ." 54 C.J.S. *Limitations of Actions* § 73 (1987).

¶36 However, the foregoing general rule pertaining to liabilities created by statute has no application when a workers' compensation insurer pursues a subrogation claim *per se*. *See* St. Paul Fire & Marine Ins. v. Glassing (1994), 269 Mont. 76, 887 P.2d 218. As we explained in *Glassing*, this is because the "right of subrogation is purely derivative[;] the insurer succeeds only to the rights of the insured, and no new cause of action is created." *Glassing*, 269 Mont. at 80, 887 P.2d at 220 (citation omitted). *See also* Preferred Risk Mut. Ins. Co. v. Vargas (Ariz. Ct. App. 1988), 754 P.2d 346, 348 (noting that subrogation does not constitute a claim for relief in and of itself, but rather, is equivalent to assignment of a preexisting claim).

¶37 That is, "the concept of subrogation merely gives the insurer the <u>right to prosecute the cause of action</u> which the insured possessed against anyone legally responsible for the latter's harm . . . ." *Glassing*, 269 Mont. at 80, 887 P.2d at 220-21 (citation omitted) (emphasis added). Therefore, an insurer's claim by subrogation, being purely derivative, is subject to the same statute of limitations as though the cause of action were sued upon by the insured. *See Glassing*, 269 Mont. at 82, 887 P.2d at 222 (holding that insurer's subrogation claim was barred by three-year statute of limitations applicable to negligence actions).

¶38 The Workers' Compensation Act provides for such a subrogation claim proper. *See* § 39-71-414(3), MCA (1985) (providing that insurer may institute third-party action if employee fails to do so within one year of date of injury). Though the statute as a whole is loosely phrased in terms of "subrogation," the insurer's right of subrogation *per se* provided for in subsection (3) must be distinguished from the insurer's "first lien" under § 39-71-414(1), MCA (1985), which amounts to a statutory right of "reimbursement" rather than a subrogation right in its classic sense. *See Cordier*, 184 Mont. at 515, 604 P.2d at 93.

¶39 In that regard, we find instructive the Oklahoma Supreme Court's recent holding in ACCOSIF v. American States Ins. Co. (Okla. 2000), 1 P.3d 987. In *ACCOSIF*, after the insurer paid out workers' compensation benefits to the injured employee, the employee

entered into a settlement with the third-party tortfeasor and its insurer. The workers' compensation insurer then filed claims against both the employee and the tortfeasor's insurer for reimbursement of workers' compensation benefits. The insurer based its claims on Okla. Stat. 85 § 44 (1991), which, akin to § 39-71-414, MCA (1985), provides that the employer or its insurer has a statutory entitlement to "reimbursement" from any third-party proceeds recovered by the injured employee (less a proportionate share of the costs and fees of the action) for compensation that the insurer paid to the employee under Oklahoma's Workers' Compensation Act. *Compare* Okla. Stat. 85 § 44(a) (1991), *with* § 39-71-414(1), MCA (1985).

¶40 The trial court in *ACCOSIF* dismissed the insurer's reimbursement action as a time-barred "subrogation claim." On appeal, the Oklahoma Supreme Court reversed, holding that the action had been "mistakenly characterized" as one for subrogation when it was really a "statute-based *pro tanto* recoupment demand." *ACCOSIF,* 1 P.3d at 992-93. The court based its holding on the statutory scheme, noting that the terms of the Okla. State 85 § 44 (1991) "fashion a key distinction between subrogation and the demand advanced in the present case." *ACCOSIF,* 1 P.3d at 992. While § 44(c) of the statute assigned to the workers' compensation insurer the paid employee's action against the third party, thus falling under the law's subrogation rubric, § 44(a) formed the basis of the insurer's claim for statutory recoupment or reimbursement from the third-party proceeds recovered by the employee. *See ACCOSIF*, 1. P.3d at 990 n.2, 992 n.14.

¶41 The court noted that "statutory recoupment is distinct from its common law namesake," which in modern legal usage has become known as the counterclaim. *ACCOSIF,* 1 P.3d at 990 n.3. The Oklahoma Supreme Court held that since the plain language of § 44(a) rendered an injured employee who recovered against a third-party tortfeasor liable to the insurer for workers' compensation paid to the employee, this "statute-based" liability fell under the limitations period for a liability created by statute other than a penalty or forfeiture. *ACCOSIF*, 1 P.3d at 993. *See also* Nestle Food Co. v. American States Ins. Co. , No. 93900, 2000 WL 943492, (Okla. Ct. App. May 1, 2000) (applying *ACCOSIF*).

¶42 We reach the same result here. Section 39-71-414(1), MCA (1985), though phrased in terms of an "insurer's right of subrogation," amounts to a statutory right to reimbursement or recoupment as against proceeds recovered from a third-party tortfeasor. For purposes of the relevant statute of limitations, this statutory right of reimbursement must be distinguished from the insurer's right of subrogation proper as provided for in § 39-71-414

(3), MCA (1985). Subrogation, in its common law sense, is the substitution of one person in place of the other, so that the person substituted succeeds to the rights of the other in relation to the debt or claim at issue. *See Skauge*, 172 Mont. at 526, 565 P.2d at 630. Subrogation, in the common law sense, is embodied in subsection (3), not subsection (1), of § 39-71-414, MCA (1985). We hold that a workers' compensation insurer's claim for statutory reimbursement brought pursuant to § 39-71-414(1), MCA (1985), constitutes a "liability created by statute" within the meaning of § 27-2-211(1)(c), MCA.

¶43 Now we must determine when Royal's reimbursement claim accrued for purposes of determining whether it was timely filed. Under Montana law, a claim or cause of action accrues when all elements of the claim or cause exist or have occurred. Section 27-2-102 (1)(a), MCA. We note that the *ACCOSIF* court determined that the moment the injured employee becomes entitled to proceeds from the third-party tortfeasor marks the time at which the insurer's right to reclaim its "statutorily prescribed compensation payout" begins to run for purposes of the statute of limitations. *See ACCOSIF*, 1 P.3d at 994.

¶44 However, the parties in this case are in agreement that Roadarmel's February 18, 1994 notice to Royal of the successful completion of the third-party action triggered the start of the two-year limitations period of § 27-2-211(1)(c), MCA. To give Royal the benefit of the doubt, we assume without deciding that the statute of limitations began to run on February 18, 1994. From that date until the time Royal filed for determination of its statutory right to reimbursement, 3½ years elapsed. Thus, we hold that Royal's claim against Roadarmel based on a liability created by statute is time-barred under § 27-2-211 (1)(c), MCA.

## II.

¶45 **Did the WCC err in concluding that the action by Royal against the attorney White is not barred by the three-year statute of limitations of § 72-34-511(1)(a), MCA, governing actions based upon an alleged breach of trust?**

¶46 White contends that the three-year statute of limitations contained in § 72-34-511(1) (a), MCA, also bars any action Royal has against him based upon an alleged breach of trust. Before the WCC, Royal argued that White was personally liable for its subrogation interest since he was a "constructive trustee" of the third-party funds recovered by Roadarmel. The WCC agreed with Royal:

Section 39-71-414, MCA, provided White with clear notice of the lien. His disbursement of amounts claimed by Royal--even while acknowledging Royal's interest in those amounts--is perplexing. His failure to acknowledge either of Edmiston's letters regarding the amount due Royal was discourteous and unprofessional. . . . Unless Royal's claim against him is barred by a statute of limitations, he is liable for the $63,864.79 due Royal.

¶47 While White's failure to respond may have been "discourteous and unprofessional," Royal provides no reasonable explanation as to why it waited several years, after informing Roadarmel that it was going to bring an action for determination of its subrogation interest, to file its claim. We determine that the WCC erred, since Royal's claim against White is time-barred under the three-year statute of limitations of § 72-34-511(1)(a), MCA.

¶48 On appeal, Royal contends that if the three-year statute of limitations applies here, it did not begin running until White disclosed his breach of trust for the first time on March 13, 1998, when Royal learned through discovery that White had disbursed the third-party funds to Roadarmel in 1994. Royal relies on the language of the statute to bolster its claim:

> If a beneficiary has received an interim or final account in writing or other written report that adequately discloses the existence of a claim against the trustee for breach of trust, the claim is barred as to the beneficiary unless a proceeding to assert the claim is commenced within three years after receipt of the account or report. <u>An account or report adequately disclosed existence of the claim if it provides sufficient information so that the beneficiary knows of the claim or reasonably should have inquired into the existence of the claim</u>. [Emphasis added.]

Section 72-34-511(1)(a), MCA.

¶49 White responds that the letter of February 18, 1994, which set forth in writing the final account of the successful appeal of Roadarmel's third-party action, was the date on which the statute of limitations as to any alleged breach of trust began to run. Royal claims, however, that knowledge of the fact that a third-party recovery had been reached is not the same as knowledge that the claimant's attorney had violated the insurer's first lien by disbursing all of the settlement proceeds to his or her client.

¶50 Ultimately, Royal's position is unavailing. As we determined under the first issue on appeal, Royal's claim against Roadarmel based on the "first lien" created by § 39-71-414

(1), MCA (1985), is time-barred. Put differently, Royal's statutory lien was "extinguished" as a matter of law two years after it received the notice of February 18, 1994. *See ACCOSIF*, 1 P.3d at 994. Royal concedes this point on appeal: "the insurer's first lien is only extinguished by the running of the statute of limitations on the principal obligation." Therefore, even assuming that Royal is correct in asserting that the three-year statute of limitations of § 72-34-511(1)(a), MCA, did not begin to run until 1998, by that point in time White could no longer be characterized as a trustee, constructive or otherwise, of the third-party proceeds. Alternatively, if we assume that the three-year statute of limitations began to run in 1994, Royal's action against White was untimely as it was filed 3½ years after Royal was put on notice of successful completion of Roadarmel's third-party action against Exxon and Great Western Chemical.

## CONCLUSION

¶51 Royal's reimbursement claim against Roadarmel is barred by the two-year statute of limitations of § 27-2-211(1)(c), MCA, and Royal's breach of trust claim against White is similarly barred by the three-year statute of limitations of § 72-34-511(1)(a), MCA. Where, as here, all of the facts bearing on the resolution of legal issues are before this Court, we have the authority to reverse the trial court's grant of summary judgment and direct it to enter summary judgment in favor of the other party. *See* Swank v. Chrysler Ins. Corp. (1997), 282 Mont. 376, 385-86, 938 P.2d 631, 637 (citing Matter of Estate of Langendorf (1993), 262 Mont. 123, 128, 863 P.2d 434, 438; Duensing v. Traveler's Companies (1993), 257 Mont. 376, 386, 849 P.2d 203, 210). Reversed and remanded for entry of summary judgment in favor of Roadarmel and White.

¶52 Reversed and remanded.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

Justice W. William Leaphart, dissenting.

¶53 I dissent. In resolving Issue I, the Court concludes that Royal's subrogation right is entirely dependent upon § 39-71-414, MCA, and thus the two-year statute of limitations applicable to statutory rights is controlling. I agree that § 39-71-414, MCA, is the source of Royal's subrogation rights. However, that statutory provision envisions that the parties may agree or contract on the terms of implementing the statutory liability. Section 39-71-414(2)(b), MCA, provides that, "[t]he injured employee may request that the insurer pay a proportionate share of the reasonable cost of the action, including attorney fees." I note that the statute does not say the injured employee can "demand" a proportionate share; rather he may "request." It leaves the parties free to determine what constitutes a "proportionate share;" what are "reasonable costs" and to agree upon whether those reasonable costs will be paid up front or in the final accounting. Accordingly, the statute invites a hybrid contractual/statutory arrangement.

¶54 As the WCC noted, on June 2, 1989, Mr. White wrote to Royal's attorney as follows: "We would also *agree* to your client, Royal Insurance Company's participation in the action against Exxon and Great Western Chemical with the $5,000 cost advancement." On June 6, 1989, Royal's attorney replied, writing in relevant part: "The insurer *accepts your offer* to fully participate in the third party action against Exxon and Great Western Chemical by paying a $5,000.00 cost advancement. No other cost advancements will be required of Royal Insurance in order to fully participate." Thus, by way of an offer and acceptance, the parties clearly "agreed" that $5,000 was a proportionate share of "reasonable costs." Furthermore, despite the fact that the statute does not require that such reasonable costs be paid up front, the parties agreed that Royal would "advance" the costs.

¶55 Where the parties enter into an agreement settling a legal claim and the agreement is supported by consideration, that agreement constitutes a contract and is enforceable as such. Heatherington v. Ford Motor Co. (1993), 257 Mont. 395, 849 P.2d 1039. The WCC correctly concluded that Royal and White, an attorney for Roadarmel, entered into an enforceable contract. Thus the applicable statute of limitations is the five- or eight-year period specified in § 27-2-202, MCA. Since the petition was filed within five years after Roadarmel's judgment against Great Western was paid, I would hold that it was timely and Royal is entitled to enforce its subrogation interest.

¶56 I also dissent as to the resolution of Issue II: Did the WCC err in concluding that the action by Royal against the attorney White is not barred by the three-year statute of limitations of § 72-34-511(1)(a), MCA, governing actions based upon an alleged breach of

trust?

¶57 Royal argues that the three-year statute of limitations of § 72-34-511(1)(a), MCA, did not begin to run until White disclosed his breach of trust for the first time on March 13, 1998, when Royal learned through discovery that White had disbursed the third-party funds to Roadarmel in 1994.

¶58 The Court, relying on its resolution of Issue I, concludes that Royal's claim against Roadarmel based on the "first lien" created by § 39-71-414(1), MCA, was extinguished as a matter of law two years after it received the notice of February 4, 1994. Thus, after that point in time (February 4, 1996), White could no longer be characterized as a trustee, constructive or otherwise, of the third-party proceeds.

¶59 Since I disagree with the Court's application of the two-year statute of limitations in resolving the first issue, I also disagree with its conclusion as to Issue II. As indicated above, I would affirm the WCC in applying the longer five- to eight-year statute of limitations to this hybrid contractual/statutory obligation. Accordingly, I would hold that White was still a trustee as of 1998 when the alleged 1994 breach of trust was first disclosed. Thus, Royal's petitions with regard to the breach of trust were timely filed under § 72-34-511(1)(a), MCA.

¶60 I would affirm the WCC on both Issues I and II.

/S/ W. WILLIAM LEAPHART

Chief Justice J. A. Turnage and Justice Karla M. Gray join in the foregoing dissenting opinion.

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY